LOTTINGER, Judge.
This is a suit filed by Hartford Fire Insurance Company and Hartford Accident and Indemnity Company, hereafter called petitioners, against the Caruso-Simoneaux Agency, Inc., Frank Caruso, Connie Caruso, and Ted Bagwell for certain premiums due from insurance sold by the Caruso-Si-moneaux Agency, Inc., hereafter called “agency”. The Lower Court awarded a judgment in favor of petitioners and against defendants, and defendant, Bag-well, alone has appealed.
The facts show that on February 27, 1967, Hartford Accident and Indemnity Company entered into an agreement with the agency whereby the agency was allowed to write bond business on behalf of Hartford Accident. On March 6, 1967, by agreement, the agency was authorized to commence writing commercial casualty, bonds and builders’ risk business on behalf of Hartford Accident and Hartford Fire. The agreement between the agency and petitioners was again amended on April 25, 1967, to enable agency to produce bonds, commercial casualty, commercial fire and personal lines of coverage that pertains to any commercial account that is written by the Hartford Insurance Group.
On July 17, 1967, Mrs. Caruso and Mr. Bagwell, both defendants, entered into a guaranty agreement with petitioners, Hartford Accident and Hartford Fire, whereby said parties agreed to reimburse said plaintiffs :
“* * * for all in unearned commissions on policies canceled, and on notes not paid at maturity, and hold them harmless against any loss or expense which they may incur by reason of any failure of said agency to fully perform its said duties or make payments as aforesaid. For the faithful performance of which obligations, we hereby bind ■ ourselves, our heirs, executors, and administrators, jointly and severally, by these presents.”
On August 1, 1967, the agreement between agency and petitioners was again amended allowing agency to write policies on behalf of the Twin City Fire Insurance Company, one of the Hartford group. This agreement was signed on behalf of agency by Mrs. Connie T. Caruso, who, with Mr. Bagwell were shareholders in agency.
The said agreement did not mention the above mentioned guaranty agreement nor was the guaranty agreement modified to reflect the change in the obligation which it secured. It appears that Mr. Bagwell was neither personally informed of, nor did he have outside knowledge of, the change in said agency agreement.
*264 Subsequently, on April 20, 1968, the entire amended agency agreement was terminated by a consent of all parties thereto. Thereafter, petitioners, Hartford Accident, Hartford Fire and Twin City Fire, filed an action against agency, Mrs. Caruso and Bagwell alleging a balance due of $5,397.87 for insurance coverage written. Subsequently, Twin City Fire dismissed its claim against all the defendants. Although we are not favored by written reasons of the Lower Court, in its oral reasons for judgment, it cited E. E. Rabalais & Son, Inc. v. United Bonding Insurance Co., La.App., 226 So.2d 528, in support of its judgment. In the Rabalais case, the Court said:
“Although we have determined that the contract was in no way changed or abandoned by the actions of Rabalais or Bor-delon, we note the general rule that for an alteration of a contract to release a compensated surety, the alteration must not only be material, but must prejudice the rights of the surety.
jjí ijc ;}* sj*
We fail to see any prejudice to the rights of United due to the actions described previously, and thus, on this ground as well, United could not be released.”
It is contended by the defendant that the surety contract under consideration in the Rabalais case was a compensated surety whereas in the present case the question revolves around the liability of an uncompensated surety.
In Rabalais, the surety, a bonding company of a subcontractor of the petitioner-contractor on a school construction job argued that the contractor and subcontractor had abandoned the contract by the subcontractor assigning revenues from the contract to a bank to secure a loan, and by the contractor issuing checks jointly to the subcontractor and its suppliers and laborers.
The Court found, as is shown by the above quotation, that these actions, without the knowledge of the bonding company, in no way changed the contract. Of course, there was a broadening of the risk of the subcontractor in that case as the subcontractor took on a new obligation when it borrowed the money by assigning the proceeds of the subcontract, but, as the Court stated, this in no way changed the subcontract so as to discharge the bonding company as surety.
We feel that the same reasoning is present in the instant case, and fail to see how the amended agency agreement adding Twin City thereto in any way changed the guaranty agreement signed by Mrs. Caruso and Mr. Bagwell. The surety agreement signed by them was still in effect only as it pertains to insurance policies written by Hartford Fire and Hartford Accident, and certainly could not be construed to apply to any policies written by Twin City without the concurrence of the obligors under the said surety agreement.
In Magnolia Petroleum Company v. Harley, La.App., 13 So.2d 84, Slack sold to Harley a filling station business. Slack, who was impleaded as a party defendant, gave to petitioner a written guaranty guaranteeing the payment of Harley’s account with petitioner. Subsequently, the filling station burned down and Harley removed the business to a new location, and petitioner continued to sell to Harley who became delinquent in payments resulting in the said law suit. Slack contended that the guaranty was intended only to secure payment of the account of the business which he had sold to Harley and that it was not his intention to secure payment under the filling station business which was opened at a new location.
The Court there held that the guaranty agreement had not been terminated by Slack nor had it been altered in such a ma *265 terial respect as to release Slack from liability, saying:
“Appellee confidently relies upon the decision of this court in Shreveport Laundries, Inc., v. Sherman, La.App., 7 So.2d 433-439, and the lower court, in written reasons for judgment, cited this case to support the holding that inasmuch as the creditor had altered in material respects the contract between it and the debtor, the guarantor (appellee) was released from liability to the creditor. No one can gainsay the correctness of this legal principle, but as we have found that the contract between Plaintiff and Harley underwent no material change, the cited case is not applicable.”
In the Shreveport case the Court held that the petitioner had failed to show that the defendant ever bound himself at any time as surety on the contract on which petitioner was attempting to recover and therefore refused recovery by petitioner. There, the Court said that the guarantor had no intention of guaranteeing the fidelity of the driver to anyone other than the particular laundry in whose employ he was at the time of the guaranty.
It is therefore our opinion that the amendment of August 1, 1967, in which the Twin City Fire Insurance Company was added to the then existing agency agreement had no effect whatsoever on the guaranty by the defendant, Bagwell, for the simple reason that he was not a party to such amendment to the agreement. His guaranty, however, we feel, did remain in full force and effect as it pertained to the agency agreement as it existed prior to said amendment because he did not terminate the said agency agreement nor did the amendment have any effect whatsoever on his guaranty agreement.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by the defendant.
Judgment affirmed.