This suit was instituted against E.G. Harley on open account for $488.09. I. Benton Slack, having signed and delivered to plaintiff a continuing guaranty of Harley's account with it, was also impleaded as defendant and judgment in solido against both defendants is sought. The guaranty is in the following language, to-wit:
"Springhill, La. "Dec. 6, 1938
"Magnolia Petroleum Co., "Shreveport, La.
"Gentlemen:
"I have transferred my business over to Mr. E.G. Harley and I will guarantee the payment of his account with you and will see that he takes care of this account on or before the 10th. of each month for all purchases made during the previous month.
"Yours truly,
"I.B. Slack."
Harley did not contest the suit. Judgment against him was confirmed on default.
Slack denies that the guaranty was intended to secure payment of the account sued on, contending that the same was effective only as regards "the business sold by him to E.G. Harley which was on the highway near Cullen, Louisiana". Further pleading, he says:
"Further answering, respondent shows that said business was completely destroyed by fire, and that E.G. Harley opened up another business in another building located approximately one and one-half (1 1/2) miles from the original location of the business sold by respondent to E.G. Harley;
"Further answering, denies that the opening of the new business at the new location was a continuance of the old one, and avers that no notice was given respondent that the said instrument was a continuing guarantee, and respondent did not agree to guarantee any new purchases made by E.G. Harley after his former business was destroyed. Specifically denies that respondent recognized said guarantee to be in effect after the new business was opened, and, to the contrary, avers that he knew nothing about said sales being made to E.G. Harley in the new location until some time after they had been made. Further avers that he was never consulted and never agreed that said purchases should be made under the former guarantee and never agreed to be responsible for same."
Plaintiff's demand against Slack was rejected and the suit dismissed. Appeal is prosecuted by it.
Slack operated a filling station not far from the village of Cullen in Webster Parish, close to a sawmill owned and also operated by him. In December, 1938, he sold the filling station business on terms of credit to Harley whose credit rating at the time was insufficient to enable him to purchase on terms the gas, oil, etc., necessary to the conduct of the business. Plaintiff declined to sell him on thirty days credit. Security from him was required. For these reasons and those hereinafter mentioned the guaranty sued upon was executed by Slack and delivered to plaintiff.
Slack was interested in the success of the filling station business because it would enable Harley to pay him the price of the sale. In addition to this, Harley obligated himself to sell at cost gasoline and oil consumed by Slack's automobiles and trucks, and he did so. *Page 86 
On April 22, 1939, the filling station and contents were destroyed by fire. However, prior to the fire Harley paid Slack all he owed him. Harley was unsuccessful in his efforts to induce the owner of the site of the destroyed station to erect a new building thereon and on June 20, 1939, resumed business in a station in the village of Cullen, one and one-half miles from the site of the destroyed station, but on the same highway.
Plaintiff assisted Harley in equipping the new station. Because of the increased distance the new station was from his sawmill, Slack's patronage was thereafter very small as compared to that prior to the fire.
All went well until April, 1940. Harley's account for March and April amounted to $495.77. It was not promptly paid and on May 29th plaintiff's District Manager wrote him as follows:
"Our previous requests for payment of your account, amounting to $495.77, which is considerably past due, representing purchases made in March and April, remain unanswered and in view of the fact that your account is due on the fifteenth day of each month we must ask for prompt payment."
A carbon copy of this letter was mailed to Mr. Slack, to which was added:
"In view of the fact that you guaranteed the account of Mr. Harley, it is our policy to keep you informed as to the condition of the account and we will appreciate your kindness in seeing that payment is made promptly."
A copy of the letter was also mailed to Mr. T.O. Machen, plaintiff's agent at Springhill, Louisiana, not far from Cullen. These letters, it appears, produced results. The account very soon thereafter was paid in full. The record is without any positive evidence reflecting Slack's reaction to the letter.
Harley again fell behind on the account. This time from June 1st to July 9, 1940, when credit was withdrawn. Purchases for this period make up the account sued on. Evidently he paid the account for the month of May. About this time Harley abandoned the station and disappeared without advising Slack or plaintiff's agent as to where he intended going. It subsequently developed that he went to Hot Springs, Arkansas, for his health.
It appeals that Harley's brother who lives in Camden, Arkansas, had orally guaranteed payment to Slack of the price of sale of the filling station, and had likewise agreed to protect Slack against loss on the guaranty. Slack, on being advised by Machen of the account's condition, offered to assist him in collecting it. Accompanied by Slack, the agent drove to Camden to see the brother. The matter was there discussed but the brother declined to pay the account, taking the position that since defendant owed Slack nothing and the property sold by him to defendant had been destroyed by fire, and a new business in a different location had been established, his responsibility to Slack had been discharged. During this conversation, preceding it, and to the time this suit was filed, Slack said or did nothing indicative of the belief or opinion on his part that he was not liable to plaintiff on the guaranty; but on the contrary, his actions and attitude rather clearly evinced the consciousness that his responsibility to plaintiff on the guaranty had not ceased. His answer to the suit appears to be the first action by him disclosing a contrary attitude.
The gravamen of Slack's defense is that the guaranty was intended to operate only as to accounts contracted by Harley while conducting the business at the location near the sawmill, and that when he re-established himself in Cullen the guaranty ceased to be effective. It is argued that the guaranty then ceased to be effective because the contractual relationship between Harley and plaintiff as regards the new business underwent material changes from what they were at the old location.
It is certain plaintiff would not have extended credit to Harley originally but for Slack's guaranty, and it is equally certain this would not have been done at the new location but for its reliance upon the guaranty. There then existed stronger reasons for exercise of care and caution in selling Harley than previously. It was not plaintiff's duty to advise Slack that he would be looked to for payment of Harley's accounts at the new location. It was Slack's duty, if he desired to terminate liability on the guaranty, to have informed plaintiff of that fact. He knew that plaintiff did not, in the first instance, extend credit to Harley independent of the guaranty and a fortiori should he have known that such would not be done in the second instance without reliance on it. He was advised on May 29, 1940, that he would be expected to pay the then past due account *Page 87 
unless Harley did so. He did not then assert non-liability for the account but allowed plaintiff to extend to Harley additional credit. His silence at the time he should have spoken was sufficient warrant for plaintiff to assume that he recognized liability under the guaranty and pursuant thereto to continue granting credit to Harley on the faith thereof. Such silence speaks eloquently of Slack's own interpretation of the guaranty's operative effect at the time. The action of both parties definitely reflects that there existed no difference between them on the subject.
Harley testified that before resuming business after the fire he told Machen, who was assisting him in getting started, that he wished to do business on "his own" and unless he could do so and have the guaranty revoked he could not patronize plaintiff. He further testified that some three weeks after this conversation Machen stated to him that "he would fix me up". He admits that he did not discuss any feature of the new business with Slack nor did he ask for surrender of the evidence of the guaranty. Machen testified positively in contradiction of Harley's testimony on this subject. He says no such conversation took place.
Mr. Paul Barlow, plaintiff's assistant credit manager, testified that he handled the Harley account, was consulted before credit was firstly extended to him, required the guaranty as a condition precedent to the extension of credit and would not have permitted sales to him on credit account at the new location but for the guaranty. He further testified that revocation of the guaranty was not mentioned to him by Machen or Harley and, of course, he had not consented to its revocation.
As to the asserted revocation of the guaranty the burden of proof rested upon Slack. The proof does not preponderate in his favor; rather, it and relevant circumstances favor plaintiff.
It is probably true that when Harley paid all he was owing to Slack, and the station with fixtures was destroyed by fire, Slack felt that their business relations were virtually at an end. It is also true that at that time he could have, without compunction of conscience, withdrawn credit support from Harley but he did not do so expressly or impliedly. Had he decided to do so obviously the first act he would have performed to consummate the determination would be to demand return of the guaranty. He did not do this.
We perceive no merit in the contention that Slack as guarantor was released because of material changes in the contract between Harley and plaintiff. There was really no change in the nature of their business relations. Plaintiff sold him on thirty days credit at both locations and that was the sum and substance of their business dealings. It was to this character of business dealings the guaranty, in specific language, relates. It assures payment of the account arising therefrom. The guaranty clearly contemplates that the parties would transact the very kind of business they did transact, to-wit:
Plaintiff would sell Harley on thirty days credit and Harley would pay therefor on or before the tenth of the succeeding month. If he failed to do this, then Slack, under the guaranty, was obligated to do so.
The guaranty says nothing as to where Harley would conduct the business purchased from Slack. It is indefinite as to duration. There is nothing in the instrument designed to relieve Slack of responsibility had Harley chosen to move to some other site; and the fact that he did so as a result of fire we do not think affects the situation. It must be remembered that all along Slack had the unquestioned right to revoke the guaranty. Plaintiff had no knowledge of the private business relations between Slack and Harley. It was interested primarily in selling its products to Harley and collecting therefor, regardless of location.
The law is well settled that a continuing guaranty remains in force until revoked by the guarantor, expressly or impliedly; or its effectiveness is extinguished in some other mode recognized by law. Krekel v. Thomasma, 255 Mich. 283, 238 N.W. 255, 81 A.L.R. 790 et seq.; 28 Corpus Juris 897.
24 American Jurisprudence 915, § 63, on the subject, says:
"If it appears that the guaranty was intended to be continuing, and the contract contains no express limitation as to the duration of the guarantor's responsibility, liability thereunder will be deemed to have continued in the absence of anything to indicate a different intention, until notice of revocation of the contract was given by the guarantor. * * *" *Page 88 
In Hibernia Bank Trust Company v. Succession of Cancienne,140 La. 969, 74 So. 267, 268, L.R.A. 1917D, 402, as reflected from the syllabus, it was held:
"A continuing guaranty, whereby the guarantor binds himself for the payment of such debts as the party named in the instrument may incur from time to time, continues in force until it is revoked. * * *"
Appellee confidently relies upon the decision of this court in Shreveport Laundries, Inc., v. Sherman, La.App., 7 So.2d 433-439, and the lower court, in written reasons for judgment, cited this case to support the holding that inasmuch as the creditor had altered in material respects the contract between it and the debtor, the guarantor (appellee) was released from liability to the creditor. No one can gainsay the correctness of this legal principle, but as we have found that the contract between Plaintiff and Harley underwent no material change, the cited case is not applicable.
For the reasons herein assigned, the judgment appealed from is avoided, annulled and reversed, and there is now judgment in favor of plaintiff, Magnolia Petroleum Company and against defendant, I. Benton Slack, in the sum of Four Hundred Eighty-Eight and 09/100 ($488.09) Dollars with five per cent (5%) per annum interest thereon from August 10, 1940, until paid, and for all costs of this suit.