487 So.2d 177 (1986)
The STEPHENS COMPANY, Plaintiff-Appellant,
v.
Elmo KEIGLEY and Billy Bonin, Defendants-Appellees.
No. 85-132.
Court of Appeal of Louisiana, Third Circuit.
April 23, 1986.
John L. Van Norman, III, Lake Charles, for plaintiff-appellant.
Daniel K. Rester, Baton Rouge, McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for defendants-appellees.
Before STOKER, DOUCET and FALKENHEINER,[*] JJ.
STOKER, Judge.
This appeal concerns the enforcement of a continuing guaranty agreement. The Stephens Company (Stephens) sued Elmo Keigley and Billy Bonin as guarantors on an open account in the name of The People's Home Center, Inc. (People's) and in the amount of $11,320.60. Keigley filed third party demands against Billy Bonin, Glen E. Bonin, Willie M. Moreno, and Fred M. Moreno, individually, and The People's Home Center, Inc., seeking indemnification in case the court found Keigley and Billy Bonin liable to Stephens. The judge found that Keigley and Billy Bonin, the defendants, were not liable to Stephens because the guaranty had been impliedly revoked. *178 As a result, the third party demands were dismissed. Stephens appeals.

FACTS
People's is a corporation which operated a building materials store in Moss Bluff, Louisiana at the time in question. On September 7, 1977 Stephens extended credit to People's and in that regard a credit application was executed by People's corporate representatives. In the same credit application, defendants Keigley and Billy Bonin, who were also the corporate representatives, executed a personal guaranty agreement in favor of Stephens. Initially there were charges made which the corporation paid. From August 29, 1981 until May 8, 1982, the account became delinquent for a total of $11,320.62. Stephens attempted to collect the debt from People's but was informed that People's was no longer in existence and had no assets. Consequently Keigley and Billy Bonin were called on as guarantors to pay the debt.
Keigley had been president of People's but resigned around six to eight months before he sold all of his stock on July 24, 1980. When he sold his stock he had the corporation and all its stockholders sign a statement which purportedly released him from any liability concerning the corporation. Billy Bonin was secretary-treasurer of People's until he left the corporation in August of 1981, however, he never sold his stock. Neither Keigley nor Billy Bonin ever actually terminated or revoked the continuing guaranty which they signed in 1977. They argue that the guaranty was impliedly revoked when they left the corporation.
The trial judge held that the guaranty had been impliedly revoked. We disagree.

GUARANTY AGREEMENT
The law is well settled that a continuing guaranty remains in force until revoked by the guarantor, expressly or impliedly; or its effectiveness is extinguished in some other mode recognized by law. Magnolia Petroleum Co. v. Harley, 13 So.2d 84 (La. App.2d Cir.1943); Bonura v. Christiana Bros. Poultry Co. of Gretna, 336 So.2d 881 (La.App. 4th Cir.1976), writ denied, 339 So.2d 11 (La.1976), 339 So.2d 26 (La.1976); Hardware Wholesalers, Inc. v. Guilbeau, 473 So.2d 108 (La.App. 3d Cir.1985).
The defendants admit that the guaranty was never actually revoked. The guaranty was signed in 1977 and was never again discussed by the parties. The defendants claim the guaranty was impliedly revoked when they left the corporation. The defendants argue that plaintiff's salesmen were aware the men were not working at People's any more and thus Stephens should have known the guaranty was no longer good.
Stephens has no duty to the guarantors concerning the agreement. Stephens had no responsibility to ask Keigley and Billy Bonin if they wanted to continue the guaranty after they left the corporation. Magnolia Petroleum Co. v. Harley, supra. It is the burden of the defendant guarantors to cancel the guaranty agreement and further, to prove the cancellation.
We believe there has been no implied revocation. To hold that behavior such as Keigley's and Billy Bonin's would revoke a guaranty, would eliminate any certainty regarding such guaranties and would render commercial transactions based on them virtually without value. The holder of the guaranty could never be sure whether their guaranty was still valid or whether some behavior on the part of the guarantor had caused an implied revocation. While the jurisprudence indicates that there may be some circumstances which would merit a finding of implied revocation, the circumstances in the case before us do not.

THIRD PARTY DEMAND
LSA-C.C.P. Art. 2133 does not require a successful party to appeal or answer if they do not seek a change or modification of the judgment. In the case before us Keigley, who is a third party plaintiff, neither appealed nor answered the appeal. Third party defendants argue that, *179 because Keigley did not appeal or answer the appeal, they are not before the court.
In Bond v. Commercial Union Assur. Companies, 387 So.2d 617 (La.App. 3d Cir. 1980), 407 So.2d 401 (La.1981), this court explained:
"The party successful at the trial level cannot appeal the judgment to the Court of Appeal. Petition of Sewerage and Water Board of New Orleans, 248 La. 169, 177 So.2d 276 (1965). Defendants, Commercial Union and Lumbermen's Mutual, were successful at the trial level. Even though their third party demands were dismissed by the trial court, these defendants were not required to appeal from that dismissal under Articles 2083 and 2133 since they would be requesting relief incompatible with the judgment dismissing the plaintiffs' claims. Such relief could not be granted by this Court without first reversing the judgment on the main demand. To hold that Articles 2082 and 2133 require Commercial Union and Lumbermen's Mutual to appeal or answer the appeal in order that this Court could hear their third party demands in the event the trial court judgment was reversed would extend these Articles to a situation which the Legislature never intended to be covered by the statute. Such an absurd result will not be imputed to those Articles. Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (La.1963)."
In accordance with the Bond court's rationale, we likewise find that the third party demands of Keigley can be heard by this court. Robertson v. Parish of East Baton Rouge, 415 So.2d 365 (La.App. 1st Cir. 1982). However, as we shall explain, we find for the third party defendants.

HOLD HARMLESS AGREEMENT
Keigley claims (through the third party action in question) that he was released of all liability concerning the corporation by the document which was signed by the corporation and all the parties in the corporation at the time he sold his stock. The clause purportedly effectuating the release provides in pertinent part:
"Your appearers, THE PEOPLE'S HOME CENTER, INC. and Shareholders thereof as listed herein above [sic] declare that for and in consideration of the sale by ELMO A. KEIGLEY, married to and living with Mary Alice Keigley, born LeBlanc, of his shares of stock in THE PEOPLE'S HOME CENTER, INC. unto the said WILLIE M. MORENO, dated July 24, 1980, they do hereby relieve, release and forever discharge the said ELMO A. KEIGLEY from any and all claims of whatsoever nature or kind arising out of or in any way connected with his ownership of stock in THE PEOPLE'S HOME CENTER, INC. and/or his employment by THE PEOPLE'S HOME CENTER, INC. as an employee. This release releases the said ELMO A. KEIGLEY from any and all claims whether known or unknown, present, past or future and is full, complete and final."
Since we find that the claim on the guaranty was not "arising out of or in any way connected with his ownership of stock in THE PEOPLE'S HOME CENTER, INC. and/or his employment by THE PEOPLE'S HOME CENTER, INC. as an employee," we consequently hold that he is still personally liable for the debt which he personally guaranteed.

KEIGLEY'S ALTERNATIVE THIRD PARTY DEMAND
Keigley's third party demand contained an alternative third party demand in paragraph 11 directed at Billy J. Bonin alone. That third party demand reads:
"In the alternative, if the defendant herein, ELMO KEIGLEY, is found to be indebted unto the petitioner, THE STEPHENS COMPANY, for the amounts prayed for in the original petition, and if this court fails to find there is a valid hold harmless or indemnity agreement as prayed for above, then ELMO KEIGLEY, under Article 2103 of the Louisiana Civil Code, prays that the third party *180 defendant herein, BILLY J. BONIN, be held liable for one-half (1/2) of any and all amounts which the defendant herein, ELMO KEIGLEY, may be cast by this court."
As a result of revision the provisions of former Article 2103 are now contained in Articles 1804 and 1805 of the Louisiana Civil Code. Under either version of the law set forth in these articles, Keigley is entitled to a judgment over against Billy J. Bonin as a co-guarantor, by way of contribution for the amount of one-half of all sums Keigley may be required to pay to satisfy any judgment rendered herein in favor of plaintiff.
For the foregoing reasons we reverse the judgment of the trial court. It is further ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff, The Stephens Company, and against defendants Elmo Keigley and Billy Bonin, in solido, for the sum of $11,320.60, together with legal interest thereon from date of judicial demand until paid and for all costs of the proceedings in both the trial and appellate courts.
It is further ordered, adjudged and decreed that there be judgment herein in favor of Elmo Keigley, as third party plaintiff, and against Billy J. Bonin, as third party defendant, by way of contribution for one-half of all sums which Elmo Keigley may be required to pay to satisfy the judgment rendered herein in favor of the plaintiff, The Stephens Company.
REVERSED AND RENDERED.
NOTES
[*] Judge W.C. Falkenheiner, Seventh Judicial District Court, Parish of Concordia, participated as Judge ad Hoc in this decision.