LANIER, Judge.
This action commenced as a suit for preliminary and permanent injunctions by a nonresident low bidder on a public works contract alleging that the State of Louisiana, Department of Transportation and Development (DOTD) unlawfully awarded a public contract to the second low bidder under the resident contractor preference provision of the Louisiana Public Contracts Law. Subsequently, the nonresident low bidder filed a supplemental and amending petition seeking (in addition to injunctive relief) a declaratory judgment that (1) it was the lowest responsible bidder and (2) the DOTD illegally awarded the contract to the second low bidder and that the contract awarded was null and void. The case went to trial on the merits of the request for a permanent injunction and the petition for declaratory relief. The trial court took the case under advisement and subsequently rendered judgment dismissing the claims of the nonresident low bidder with prejudice. This devolutive appeal followed. DOTD and the second lowest bidder filed motions to dismiss the appeal as moot.
FACTS
On November 16, 1984, DOTD advertised for bids for the construction of the superstructure of the Mississippi River Bridge at Gramercy (the Project).
On November 21, 1984, Richard McCal-lum of Bristol Steel and Iron Works, Inc. (Bristol) telephoned the DOTD office in Baton Rouge and spoke to Dempsey White, DOTD’s chief engineer, about the Louisi *944 ana reciprocal bid preference law referred to in the Project’s notice to bidders. Bristol was domiciled in the State of Virginia. White advised McCallum that preference was given only if Bristol’s home state of Virginia gave resident contractor preference. Virginia law did not have such a preference.
On November 28, 1984, five bids were received and opened by DOTD:
1. Bristol Steel and Iron Works, Inc. $43,678,235.89
2. Traylor Brothers, Inc. & Williams Brothers Const. Co., Inc. (A Joint Venture) 43,767,690.00
3. T.L. James & Co., Inc. & Boh Brothers Const. Co., Inc. (A Joint Venture) 43,808,980.05
4. Pittsburgh-Des Moines, Inc. 47.603.810.89
5. Harris Structural Steel Co., Inc. 47.653.295.89
The second lowest bidder, Traylor & Williams, was a joint venture formed on the day that it submitted its bid, November 28, 1984. Traylor & Williams were equal partners. Traylor acted as managing partner for the Project. On November 28, 1984, Traylor was an Indiana corporation with its principal place of business in Evansville, Indiana. Williams was a Texas corporation having its principal place of business in Houston, Texas.
On November 30, 1984, The M/V Cargill MacMillian collided with the substructure of the Mississippi River Bridge at Gramer-cy. After this, DOTD was uncertain of the status of the Project. DOTD was concerned that this accident could cause a delay in the Project and the Project might have to be rebid at a later day. Also, on that date, Bristol contacted Tom Payment of the DOTD about awarding the contract. Payment informed the representative of Bristol that it might not be awarded the contract because of the five percent preference rule in favor of Louisiana resident contractors. La.R.S. 38:2225(A). However, the DOTD was awaiting the decision of the Attorney General’s Office on this matter.
On December 6, 1984, DOTD decided to delay awarding the Project contract indefinitely until it learned how badly the November 30th collision had damaged the substructure.
W.P. Wray, Jr., counsel for Traylor & Williams, wrote a letter dated December 7, 1984, to DOTD’s secretary, Robert Graves. In the letter, Wray stated that the contract should not be rebid and the preference law should be construed in favor of his clients. Additionally, Wray asked the DOTD’s secretary to meet with him to discuss these matters.
On December 27, 1984, the substructure contractor, Traylor Brothers, met with DOTD personnel to discuss the extent and severity of the damage caused by the November 30th collision.
On January 2, 1985, McCallum of Bristol again telephoned DOTD’s White. White advised McCallum that the job would either be awarded to Bristol or Traylor & Williams, or would be rebid.
On January 9, 1985, Traylor & Williams met with DOTD’s secretary to discuss the status of the award of the superstructure contract. Two days after the meeting on January 11, 1985, the contract was awarded to Traylor & Williams. The order to commence work was issued by DOTD to Traylor & Williams effective January 14, 1985.
Bristol learned of the award to Traylor & Williams on January 14, 1985. This was not confirmed in writing to Bristol until January 22, 1985. Bristol then requested an explanation from the DOTD.
On three separate occasions, Bristol sent letters to DOTD protesting the award of the contract to Traylor & Williams and seeking a hearing. On March 22,1985, in a letter addressed to Bristol’s President, Otis Hart, DOTD’s secretary, Graves, denied that Bristol had any right to a hearing on this matter.
This suit was filed on March 29, 1985.
MOTIONS TO DISMISS THE APPEAL AS MOOT
DOTD has filed a motion to dismiss the appeal as moot contending “the project is now 61% percent complete as can be seen from the affidavit attached hereto as Exhibit C” and that “appellant’s attempt to obtain injunctive relief is now moot because *945 of the execution and performance of the contract.” Traylor & Williams has filed a motion to dismiss the appeal as moot contending an attached affidavit shows “the public works contract at issue in this appeal is now [September 29, 1986] more than sixty-five (65%) percent complete”, Bristol has not requested monetary relief, and to now decide this case “would be an abstract proposition from which no practical result could follow.”
A suit is moot when the rendition of a judgment for the relief requested can have no practical legal effect upon the issue in controversy. A court should not rule on a moot issue because such a ruling would serve no useful purpose. Robin v. Concerned Citizens For Better Education in St. Bernard, Inc., 384 So.2d 405 (La.1980); State in the Interest of a Minor Female Child, 470 So.2d 595 (La.App. 1st Cir.1985); Board of Regents, State of Louisiana v. Board of Trustees for State Colleges and Universities, 460 So.2d 80 (La.App. 1st Cir.1984).
In its amended prayer, Bristol sought the following relief: (1) a declaratory judgment that (a) it was the lowest responsible bidder and (b) DOTD awarded the contract to Traylor & Williams illegally, and, thus, the contract was null and void, and (2) a permanent injunction (a) enjoining DOTD “from proceeding with all further construction or the purchase of material for construction ... or any work for the Gramercy bridge superstructure included in said Project” and (b) enjoining DOTD “from rejecting the bids submitted on November 28, 1984 ... and from advertising or readvertising for new or alternative bids for said project and for the construction of the superstructure for ... ” the Project. [Emphasis added.]

Mootness of the Petition for Declaratory Judgment

Any contract entered into for the construction of a public work which is contrary to the provisions of La.R.S. 38:2211 through 38:2225 shall be null and void. La.R.S. 38:2220(A). In all public construction contracts not subject to arbitration, each party to such contract is entitled to judicial review for redress for any action, determination or interpretation with respect to such contract. La.R.S. 38:2217. Cf. La. Const, of 1974, art. I, § 22. When a low bid is illegally rejected and the public works contract is awarded to another bidder, the low bidder may seek an injunction against the public entity entering into a contract with the other bidder and/or may seek the annulment of the contract awarded to the other bidder. Haughton Elevator Division v. State, Division of Administration, 367 So.2d 1161 (La.1979). The low bidder may file a suit for damages against the public body for failure to comply with the Louisiana Public Contracts Law. Haughton Elevator Division, 367 So.2d at 1169, nn. 8 & 9; North Central Utilities, Inc. v. Walker Community Water System, Inc., 437 So.2d 922 (La.App. 2nd Cir.1983). If the rights of the low bidder are affected by a statute (such as the Louisiana Public Contracts Law), he may seek a declaratory judgment to determine any question of construction or validity arising under the statute and obtain a declaration of rights, status, or other legal relations thereunder. La.C.C.P. art. 1872.
The fact that a party does not couple a claim for damages with a petition for declaratory relief does not invalidate the petition for declaratory relief or bar a subsequent action for damages. In Blaise Parking and Enterprises Corporation v. Project Square 221, 409 So.2d 691 (La.App. 4th Cir.1982), the plaintiff (Blaise) obtained a final declaratory judgment that the defendant (Project) violated the terms of a lease agreement between the parties. Thereafter, Blaise filed suit against Project for the damages caused by this past contractual breach. In a peremptory exception pleading the objection of no cause of action, Project contended Blaise was not entitled to damages for Project’s breaches of contract occurring before the declaratory judgment became final. In disposing of this argument, the court observed as follows:
Project argues that such a procedure defeats one of the purposes of the declaratory judgment procedure, namely, adjudi *946 cation of disputes without exposure to damages; and it promotes piecemeal litigation and a loss of judicial economy. Project recognizes that Blaise could have sought damages from the outset and obtained a judicial interpretation as an incident to the suit but contends that Blaise is somehow estopped from claiming damages having elected to seek declaratory relief. Project acknowledges that there is no authority in Louisiana for its position and simply argues that its view is the ‘better’ one.
The starting point for our decision is the language of our Code of Civil Procedure establishing declaratory judgment procedure. Art. 1871 which sets out the scope of declaratory proceedings provides that ‘the existence of another adequate remedy does not preclude a judgment for declaratory relief where appropriate. Thus, even though Blaise could have filed a damage suit originally it was not precluded from seeking declaratory relief. But, here, we have the other side of the coin with Project arguing monetary damages. Art. 1878 seems to supply the answer to this contention. It provides:
‘Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is considered sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith. ’
Project argues that this article means that a party who has obtained a declaratory judgment may return to court to enforce the provisions of the judgment but that the article does not contemplate a suit for damages sustained by the plaintiff before he obtained a declaratory judgment that the acts causing the damage were illegal or improper. In the first place, the Burton [v. Lumbermans Mutual Casualty Co., 152 So.2d 235 (La.App. 4th Cir.1963)] case referred to above in connection with attorney fees implies otherwise when it says:
‘While this judgment in determining which insurer is primarily liable, may later form the basis of an action to recover attorney’s fees, etc_’ (emphasis supplied)
While Project cites no cases from other jurisdictions in support of its argument we are referred to Beacon Const. Co., Inc. v. Mateo Electric Co., Inc., 521 F.2d 392 (2 Cir.1975), Security Insurance Company of New Haven v. White, 236 F.2d 215 (10 Cir.1956) and Atchison v. City of Englewood, 180 Colo. 407, 506 P.2d 140 (1973), which refute Project’s position. In the last case the court considered many of the same arguments advanced by Project here and concluded:
‘We reaffirm the rule that a declaratory judgment is conclusive as to the question raised by the parties and passed upon by the court [citation omitted]. A declaratory judgment, however, does not constitute an absolute bar to subsequent proceedings where the parties are seeking other remedies, even though based upon claims which could have been asserted in the original action ... ’
[[Image here]]
Project’s position is an application of the election of remedies doctrine. It would have us hold that Blaise’s failure to seek damages initially and its seeking only a declaratory judgment (with reservation of its right to seek damages later) constituted an irrevocable election of remedies. We conclude, as we did in the previous case, that Project’s position is without merit and that Blaise had a cause of action for damages even though it earlier sought only a declaratory judgment and even though such damages were sustained before the declaratory judgment became final. [Underscoring added.]
Blaise Parking and Enterprises Corporation, 409 So.2d at 694-696.
Thus, the question of the validity of the contract can be litigated in one proceeding, and, if the contract is invalid, the question of damages for the low bidder (and/or com *947 pensation for the party actually receiving the illegal contract) can be litigated in a subsequent proceeding. See, for example, Housing Authority of City of Opelousas, Louisiana v. Pittman Construction Company, 264 F.2d 695 (5th Cir.1959) and Marquette v. Housing Authority of Opelousas, 137 So.2d 374 (La.App. 3rd Cir.1962).
The fact that a public contract let in violation of the Louisiana Public Contracts Law has been performed in whole, or in part, does not render a suit to declare the contract null and void moot. A declaration of nullity of the contract has practical, legal effects on the parties. If the party illegally obtaining the contract acted in bad faith, he is entitled to no compensation for his performance under the contract; if he acted in good faith, he may receive quantum meruit (actual cost of materials, services and/or labor) but may not recover for overhead and profits. Coleman v. Bossier City, 305 So.2d 444 (La.1974); Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (1949); Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943); A. V. Smith Construction Company, Inc. v. Maryland Casualty Company, 450 So.2d 39 (La.App. 3rd Cir.1984); Davis v. Franklin Parish School Board, 412 So.2d 1131 (La.App. 2nd Cir.1982), writ denied, 415 So.2d 942 (La.1982). As previously indicated, the low bidder illegally deprived of the contract simply may proceed to file a suit for appropriate damages.

Mootness of the Petition for Permanent Injunction

The injunctive relief sought by Bristol is to prohibit the further construction, purchase of materials and work for the Project and the taking of new and/or alternative bids, if the contract is declared null. Even if we assume the facts asserted in the motions to dismiss are correct,[1] these claims for relief are not moot. Even if the Project is 65% complete, completion of the remaining 35% can be enjoined. If the completion of the remaining 35% is enjoined, DOTD also can be enjoined from rebidding for the completion of the remaining 35%.
The case of Cox v. Watts, 329 So.2d 917 (La.App. 1st Cir.1976) is factually distinguishable from the instant case. In Cox, the plaintiff only sought to enjoin the signing of the allegedly illegal contract. However, the contract was signed before the trial court judgment was signed. This court declared the appeal moot because “the issue presented by the injunction, i.e., a prohibition against the signing of a contract, has been accomplished and it is beyond our power to give the relief prayed for.” Cox, 329 So.2d at 919. The case of Louisiana State Licensing Board for Contractors v. Cedotal, 458 So.2d 503 (La.App. 1st Cir.1984) is also factually distinguishable. In Cedotal, the plaintiff sought to enjoin the construction of a building because the builders-defendants were not licensed contractors. On appeal, it was uncontested that the building had been completed. This court dismissed the appeal as moot noting that when “the act sought to be enjoined is accomplished pending appeal, the appeal will be dismissed as moot.” Cedotal, 458 So.2d at 504.[2]
The motions to dismiss the appeal as moot are without merit and are denied.
IS TRAYLOR & WILLIAMS A LOUISIANA RESIDENT CONTRACTOR FOR PURPOSES OF THE BID PREFERENCE PROVISIONS OF LA.R.S. 38:2225(A)?
(Assignment of Error 4; Issue 8)
Bristol contends the trial court committed error by concluding Traylor & Williams *948 was entitled to the 5% preference provided by La.R.S. 38:2225(A). Specifically, Bristol contends that, pursuant to La.R.S. 38:2211(-A)(7)(a)(iii), Traylor & Williams can qualify as a Louisiana resident contractor entitled to the preference only if either party thereto had no change in ownership for two years preceding its bid, that Williams had a change of ownership during this period, and, therefore, Williams does not qualify and the joint venture does not qualify. Traylor & Williams contends the “ownership” of Williams did not change during the pertinent period, only the percentage of “ownership” changed between the two principal owners of the company, James D. Pitcock and Claude K. Williams, and the company employees. Traylor & Williams assert this type of change of ownership is not that contemplated by the statute.
La.R.S. 38:2225(A) provides as follows:
In the letting of contracts for public work by any public entity, except contracts financed in whole or in part by contributions or loans from any agency of the United States government, preference shall be given to Louisiana resident contractors over nonresident contractors. Any contract awárded by a public entity for the erection, construction, alteration, or repair of any public building or structure or for any public work or improvement for which competitive bidding is not required by law must be awarded to a Louisiana resident contractor, provided there is a Louisiana resident contractor available with the expertise required for the specific job. If competitive bidding is required by law, the contract must be awarded to the Louisiana resident contractor making the lowest responsible bid if the Louisiana resident contractor’s bid is not more then five percent higher than the lowest responsible nonresident bid.
La.R.S. 38:2211(A)(7)(a) defines a Louisiana resident contractor for purposes of this suit as follows:
A. As used in this Part unless the context clearly indicates otherwise, the following terms shall mean:
[[Image here]]
(7)(a) For the purposes of this Section, a ‘Louisiana resident contractor’ includes any person, partnership, association, corporation, or other legal entity and is defined as one that either:
(i) Is an individual who has been a resident of Louisiana for two years or more immediately prior to bidding on work,
(ii) Is any partnership, association, corporation, or other legal entity whose majority interest is owned by and controlled by residents of Louisiana, or
(iii) For two years prior to bidding has maintained a valid Louisiana contractor’s license and has operated a permanent facility in the state of Louisiana and has not had a change in ownership or control throughout those two years.
The general rules of statutory construction applicable herein are set forth in Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984) as follows:
When a law or ordinance is clear- and free from all ambiguity, it must be given effect as written....
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express *949 terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker.
[[Image here]]
When the expressions of a law are ‘dubious’, the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause which induced the lawmaker to enact it. ... When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory. ... If there is an irreconcilable conflict between the provisions of a law, only one provision can prevail.
In American Waste and Pollution Control Company v. Madison Parish Police Jury, 488 So.2d 940, 943-944 (La.1986), appears the following:
La.R.S. 38:2212, insofar as it requires advertising and obtaining competitive bids, is a prohibitory law enacted in the public’s interest to help insure that tax dollars for public works are spent wisely. Competitive bidding following public advertisement is the vehicle by which government entities seek to get the lowest possible price from a responsible bidder on a public works project. Preventing exorbitant and extortionate prices as well as favoritism is the primary goal of the public bid law.
[[Image here]]
As previously stated, the public bid law is a prohibitory law enacted in the public’s interest to help insure that the governmental body gets the lowest price from a responsible bidder on a public works project. Thus, the phrase ‘public bid law’ refers to those salutary competitive bidding provisions designed to protect the public fisc. La.R.S. 38:2225(A), the preference statute, is an obvious exception to the general rule of competitive bidding because it requires an award to one other than the lowest bidder, thereby costing the public body an amount up to five percent in excess of the lowest bid obtained. A statute limiting the application of a general rule is an exception that must be strictly construed in order to give full effect to the legislative intent of the general rule. ... Such construction is particularly appropriate when, as here, the general rule is a prohibitory law.
However, although a statute must be strictly construed, such construction must be reasonable. Slagle-Johnson Lumber Company, Inc. v. Landis Construction Company, Inc., 379 So.2d 479 (La.1979); Javeler Construction Company, Inc. v. Federal Insurance Company, 472 So.2d 258 (La.App. 1st Cir.1985), writ denied, 476 So.2d 354 (La.1985).
As previously indicated, Traylor is an Indiana corporation with its principal place of business in Evansville, Indiana. Williams is a Texas corporation with its principal place of business in Houston, Texas. Thus, Traylor & Williams does not qualify as a Louisiana resident contractor under La.R.S. 38:221l(A)(7)(a)(i).
The record shows the majority of the shareholders of Williams are residents of Texas. The majority of the shareholders of Traylor are residents of Indiana. Thus, Traylor & Williams does not qualify as a Louisiana resident contractor under La.R.S. 38:2211(A)(7)(a)(ii).
For Traylor & Williams to qualify as a Louisiana resident contractor for purposes of the bid preference of La.R.S. 38:2225(A), it must meet the requirements of La.R.S. 38:2211(A)(7)(a)(iii) by (1) having maintained a valid Louisiana contractor’s license for two years prior to the bid, (2) having operated a permanent facility in Louisiana, and (3) not having a change in ownership or control for two years prior to the bid. Traylor appears to have met these require *950 ments. Traylor has held a Louisiana contractor’s license continuously since 1956; since 1979, Traylor has specifically been licensed to practice highway, street and bridge construction (heavy construction) by the State of Louisiana. From November 1981 through March 1985, Traylor maintained a permanent facility in Louisiana at 4314 S. Sherwood Forest Boulevard in Baton Rouge. That facility was moved to 12042 Briksome Avenue in Baton Rouge in March of 1985. In addition, Traylor has maintained construction offices in Gramer-cy, Vidalia and Jonesville, Louisiana. Tray-lor has had no change in ownership or control since June of 1981.
Williams has been licensed by the State of Louisiana as a contractor since at least 1981. Williams is licensed to practice highway, street and bridge construction (heavy construction) in the State of Louisiana under Contractor’s License No. 2463. Williams has maintained permanent facilities in the State of Louisiana for greater than two years. In 1981, Williams purchased a facility for its main office at P.O. Box 578, Highway 90 West, Rayne, Louisiana, 75078. Additionally, Williams also has office space in Baton Rouge at 2762 Continental Drive. Williams has maintained these two fixed facilities and five jobsites facilities in the State of Louisiana. The jobsite facilities in Louisiana are located in Welcome, Boutte, Destrehan and New Orleans. Williams has met the first two requirements of La.R.S. 38:2211(A)(7)(a). However, Williams has had a change in stock ownership in the two years prior to the bid.
Prior to 1981, the stock ownership of Williams was divided equally between James D. Pitcock, Jr. and Claude K. Williams. In January of 1982, Williams established an Employees Profit Sharing and Stock Ownership Plan (commonly and hereinafter referred to as ESOP). The Williams ESOP was approved by the United States Department of Labor and the Internal Revenue Service. Pitcock was the administrator of the ESOP. Each year, Williams made cash payments to the ESOP, and the Williams employees (through the ESOP) would buy shares of Williams stock from Pitcock and Claude Williams. On October 10, 1983, the Supervisors Equipment Company (SEC) was incorporated to provide incentive stock bonuses to supervisory employees of Williams. Pitcock and Claude Williams each sold $2,500,000 (total $5,000,000) worth of Williams stock to SEC. This was approximately 20% of the total stock ownership. SEC, through its President, Bruce Owens, executed two promissory notes for $2,500,000 each, payable in ten years, which notes were payable to Pitcock and Claude Williams individually. SEC purchased Williams’ equipment and then leased the equipment back to Williams. SEC used the profits from the rental of the equipment to pay on the two notes. SEC pledged the Williams stock as security for payment of the notes. The change in Williams stock ownership between November 28, 1982, and November 28, 1984, was as follows:
Number of Number of Shares owned Shares owned
Owner as of 11-28-82 as of 11-28-84
Pitcock 46,777.67 32,143.06
Claude Williams 46,777.67 32,143.06
Williams ESOP 3,978.00 14,278.36
SEC -0- 18,968.86
TOTAL 97,533.34 97,533.34
At issue herein is whether or not Williams had “a change in ownership or control” within the purview of La.R.S. 38: 2211(A)(7)(a)(iii) during the two years prior to the bid. Initially, we note the words ownership and control are separated by the disjunctive conjunction or. This indicates that the ownership and control of Williams must be examined separately. La.R.S. 1:9; Mayor and Council of Morgan City v. Ascension Parish Police Jury, 468 So.2d 1291 (La.App. 1st Cir.1985). Cf. La.C.C.P. art. 5056; La.C.Cr.P. art. 6. A person or persons could have control of a corporation with proxies, voting trusts and/or pledges and not have ownership of it and vice versa. The facts of record show that Pitcock and Claude Williams had control of Williams at all times pertinent hereto.
Because Williams is a Texas corporation, it would seem that we should examine its *951 ownership pursuant to Texas law. La.C.C. art. 10. However, no appropriate Texas law has been brought to our attention. In the absence of a showing of what is the appropriate Texas law, it is presumed to be the same as that of Louisiana. La.C.C.P. art. 1391; Vining v. Bardwell, 482 So.2d 685 (La.App. 1st Cir.1985), writ denied, 487 So.2d 439 (La.1986); Washington v. Washington, 471 So.2d 925 (La.App. 2nd Cir.1985); Mahmud v. Mahmud, 444 So.2d 774 (La.App. 4th Cir.1984). Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. La.C.C. art. 477. A business corporation is a legal entity composed of individuals which continues to exist notwithstanding a change of the individuals which compose it. La.C.C. art. 427. The ownership of a stock business corporation is evidenced by shares of stock. La.R.S. 12:1(F), (R) and (S). A review of the evidence shows that within two years of the date of the bid the ownership (stock) of Williams changed. The employees of Williams obtained 10,300.36 shares, SEC acquired 18,968.86 shares and Pitcock and Claude Williams each sold 14,-634.61 shares.
Traylor & Williams contends its ownership did not change within the purview of La.R.S. 38:2211(A)(7)(a)(iii) with the following argument:
The ‘ownership’ of Williams did not change between November 28, 1982 and November 28, 1984. Throughout, the ownership of the company continued to be divided among Mr. Pitcock, Mr. Williams and their employees. The relative percentages of ownership interests changed, but ownership did not.
[[Image here]]
Williams simply did not undergo the kind of change of ownership, where former stockholders sell all their shares and new stockholders invest in the company, or the kind of change of control, where the stockholders who run the corporation are displaced by other stockholders with more voting power, that the definitional section of the bidder’s preference statute contemplates.
This argument is not supported by the facts or the law. Factually and legally, SEC is a separate legal entity and distinct from the supervisory personnel of Williams who compose it. La.C.C. art. 435. SEC is a legal entity, separate and distinct from Williams, Pitcock, Claude Williams or the Williams employees. SEC acquired its ownership in Williams during the two years prior to the bid. Thus, the ownership of Williams did change during the two year period, and ownership did not continue to be divided only between Pitcock, Claude Williams and the Williams employees. La. R.S. 38:221l(A)(7)(a)(iii) does not limit the size of the change in ownership to all, a majority or a certain percentage. By using the disjunctive conjunction or the legislature has expressed an intent that ownership is not equated with control. Thus, the type of ownership intended is that which can exist without control. Obviously, this contemplates a minority ownership or a majority ownership without control. Such an interpretation is consistent with the strict construction mandated in the American Waste and Pollution Control Company case.
The purposes of a resident bid preference law are to encourage local industry, to strengthen and stabilize the local economy and to enhance the local tax base. Galesburg Construction Company Inc. of Wyoming v. Board of Trustees of Memorial Hospital of Converse County, 641 P.2d 745 (Wyoming 1982). These purposes are reflected in the definitions of what constitutes a Louisiana resident contractor for the Louisiana Bid Preference Law. In particular, under La.R.S. 38:2211(A)(7)(a)(ii), a partnership, association, corporation or other legal entity qualifies as a Louisiana resident contractor if its majority interest is owned and controlled by residents of Louisiana. No other criteria is necessary. However, under La.R.S. 38:2211(A)(7)(a)(iii), which deals with partnerships, associations, corporations or other legal entities which are not owned and controlled by residents of Louisiana, an entity cannot qualify as a Louisiana resident contractor if there has been a change in its ownership or control for two years prior to the bidding and it *952 meets additional criteria. The obvious legislative purpose of putting ownership and control in the disjunctive (or) in La.R.S. 38:221l(A)(7)(a)(iii) is to exclude the maximum number of entities which are not owned and controlled by Louisiana residents from qualifying under this definition.
Thus, we conclude that the “change in ownership” referred to in La. R.S. 38:2211(A)(7)(a)(iii) means any change in ownership. Because Williams had a “change in ownership” during the two year period, it does not qualify as a Louisiana resident contractor, Traylor & Williams does not qualify as a Louisiana resident contractor, DOTD awarded the contract for the Project to Traylor & Williams in violation of the Louisiana Public Contracts Law, and the contract is null and void.
This assignment of error has merit.[3]
DECLARATION OF LOWEST RESPONSIBLE BIDDER
Bristol requested in the trial court that it be declared the lowest responsible bidder. We decline to grant this relief for several reasons. First, we note that the record does not reflect that DOTD has made an administrative determination about whether Bristol is a responsible bidder. Bristol’s bid was not accepted because DOTD determined that Traylor & Williams was entitled to the Louisiana resident contractor preference, not because it determined that Bristol was not responsible. Second, pursuant to La.R.S. 38:2214(A)(2), DOTD may reject any and all bids for just cause. Cf. Milton J. Womack, Inc. v. Legislative Budgetary Control Council, 470 So.2d 460 (La.App. 1st Cir.1985). Third, if the joint venture of T.L. James and Boh Brothers is a Louisiana resident contractor, it would be entitled to bid preference because its bid is within 5% of Bristol’s bid. Under these circumstances, we decline to declare Bristol the lowest responsible bidder and decline to enjoin DOTD from rejecting all bids and rebidding the work to be done on the Project. Cf. Housing Authority of City of Opelousas, Louisiana, 264 F.2d at 704.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of Bristol and against DOTD and Traylor & Williams declaring the contract entered into between DOTD and Traylor & Williams to be null and void and permanently enjoining DOTD and Traylor & Williams from all further construction, acquisition of material or work for the Project until such is authorized by compliance with the Louisiana Public Contracts Law.[4] The motions to dismiss are *953 denied. DOTD and Traylor & Williams are cast for costs of $2,202.94.
REVERSED AND RENDERED; MOTIONS TO DISMISS DENIED.

. We question whether these factual assertions are part of the record upon which we must decide this case. Capital Drilling Company v. Graves, 496 So.2d 487 (La.App. 1st Cir.1986) and the authorities cited therein.

. The result in E. Lionel Pavlo Engineering Co. v. State, Department of Transportation, 415 So.2d 556 (La.App. 1st Cir.1982) is correct; the reliance therein on Cox v. Watts, supra, for the proposition that a request for injunctive relief is moot when a construction contract is mostly complete is not. The result in Daves Insurance Agency, Inc. v. State, Division of Administration, 488 So.2d 705 (La.App. 1st Cir.1986), writ denied, 489 So.2d 236 (La.1986) is correct because the plaintiff sought declaratory relief, in addition to an injunction; however, the complete performance of a public contract would render a request to enjoin its performance moot.

. We decline to determine the constitutionality of La.R.S. 38:2225(A) because the contract in question has been declared null and void for another reason.

. Traylor & Williams filed a third party demand against DOTD for indemnity, or, alternatively, contribution. (This pleading was labeled a cross-claim.) This claim is now properly before us. Stephens Company v. Keigley, 487 So.2d 177 (La.App. 3rd Cir.1986); Versai Management, Inc. v. Monticello Forest Products Corporation, 479 So.2d 477 (La.App. 1st Cir.1985). However, the record before us is totally inadequate for us to adjudicate this claim. The following observations in Pittman Construction Company, Inc. v. Parish of East Baton Rouge, 493 So.2d 178, 193 (La.App. 1st Cir.1986), writ denied, 493 So.2d 1206 (La.1986) are pertinent:
The testimony revealed that Boh initiated the work under the contract and had performed some work as of the time of trial. The record does not disclose the cost or value of the work performed, its compliance with the contract, plans, and specifications as advertised; whether it has been performed in a skillful and workmanlike manner or if it is acceptable to the City-Parish and its engineer. Based on the record, I cannot make a determination as to these or other matters which may be pertinent to the relief to which the City-Parish and/or Boh may be entitled, nor was such relief pled or prayed for herein. It, therefore, may be necessary for Boh and the City-Parish to engage in a separate proceeding for determination of their respective rights and to the extent the same cannot be determined between them without such proceedings. Likewise, it may be necessary for the City-Parish and Pittman to engage in a separate proceeding for the determination of the work performed by Boh, its compliance with the contract, plans, and specifications, as advertised, the extent to which it is usable for its intended purposes and the acceptance thereof by the City-Parish and its engineer. Accordingly, to the extent Pittman and the City-Parish cannot agree as to an appropriate credit *953 for the work performed, the parties are relegated to a separate proceeding for such determination, provided, however, that such shall not retard, delay or impede the execution of judgment herein or the signing of the contract between Pittman and the City-Parish and the performance of the balance of the work by Pittman.