561 So.2d 813 (1990)
COMMERCIAL NATIONAL BANK IN SHREVEPORT, Plaintiff-Appellee,
v.
Joseph R. KEENE, Thomas E. Ball, James A. Whatley and Harold G. Smith, Defendants-Appellants.
No. 21417-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
*814 E. Ray Kethley, Shreveport, for James A. Whatley.
Bodenheimer, Jones, Klotz & Simmons by Norman Lafargue, Shreveport, for plaintiff-appellee.
Before MARVIN, FRED W. JONES, Jr. and NORRIS, JJ.
MARVIN, Judge.
Whatley, who, with three other partners, executed a continuing guaranty to the plaintiff bank for the debts of the partnership up to $175,000, appeals a judgment enforcing the guaranty against him for a debt of $142,700 the partnership incurred almost 17 months after Whatley withdrew from and sold his interest in the partnership to the others.
We affirm. Stephens Co. v. Keigley, 487 So.2d 177 (La.App. 3d Cir.1986); Texaco, Inc. v. State Hot Mix Corporation, 276 So.2d 383 (La.App. 2d Cir.1973), writ refused.

FACTS; CONTENTIONS
The facts were stipulated. After joining the partnership in 1984, Whatley and his three partners executed for CNB a Partnership Account Agreement and the Continuing Guaranty in 1985 on CNB's printed forms. Neither instrument refers to the other. The Partnership Account Agreement provides that "any authorization [of a partner to borrow money and sign notes for the partnership] ... may be revoked by [written] notice ... signed by any one of the [partners] ..." The Continuing Guaranty guaranteed future debts of the partnership but did not provide for revocation. The law provides the manner in which the guaranty, or suretyship, may be revoked. See discussion at page three of this opinion.
In the written sale to the other partners executed later in 1985, Whatley was expressly released from "all past and present claims, contracts and obligations, notes and mortgages of the partnership." The others agreed to indemnify and hold Whatley harmless from any liability arising out of partnership business.
The sale of Whatley's partnership interest mentioned only one obligation of the partnership, that being a debt owed pursuant to an $8 million line of credit at a savings association in Texas. The sale did not mention the continuing guaranty or any obligation owed by the partners or partnership to CNB or to other creditors. The sale cannot be interpreted that the Texas creditor released Whatley from that debt.
The partnership executed the $142,700 90-day promissory note to CNB on December 8, 1986. The note was not paid when due or when later demands were made.
Whatley contends that his "release" by the other partners in the 1985 sale of his interest is "written" revocation of the continuing guaranty to CNB because the "knowledge" of attorney Harper, the lawyer whom Whatley hired to draft and perfect the sale, is legally imputable to CNB through the law firm, of which Harper was a member (Cook, Yancey, King & Galloway), that had represented CNB for many years.
On July 31, 1987, Cook, Yancey, King and Galloway, through an associate attorney other than Harper, instituted CNB's action on the note against the partnership and the four partners who executed the Continuing Guaranty. That law firm withdrew as CNB counsel the day after Whatley filed his answer to the action, asserting:
... Whatley retained ... Harper of the law firm of Cook, Yancey, King & Galloway to draft a document selling Whatley's partnership interest ... No funds had been advanced on the continuing guaranty ... at this time. At the same time, [CNB] was represented by ... Yancey of the law firm of Cook, Yancey, King & Galloway. Mr. Whatley should not be held accountable on the continuing *815 guaranty due to [CNB's] knowledge of his withdrawal from [the partnership].
Whatley did not inform or instruct Attorney Harper about the CNB Continuing Guaranty or about "other accounts" of the partnership. Whatley's assertion does not suggest that he hired Harper to obtain a release of any debt direct from any creditor. CNB was not notified by Whatley or by anyone that Whatley had sold his partnership interest or about the Continuing Guaranty. There is no suggestion that any member of the law firm knew anything about the partnership's dealings with CNB until after the note was past due. There is no suggestion that Attorney Harper was representing anyone other than Whatley in the sale and assignment of Whatley's partnership interest or that CNB was somehow involved in that transaction.

LAW
A contract of guaranty is a contract of suretyship. The terms are interchangeable. First National Bank of Crowley v. Green Garden, 387 So.2d 1070 (La.1980). A continuing guaranty remains in force until revoked by the guarantor, expressly or impliedly, or its effectiveness is extinguished in some other mode recognized by law. A suretyship is revocable by the surety until the creditor or debtor has acted upon it. See CC Arts. 3058, 3061 and Revision Comment (a) (1988). See CC Arts. 3058, 3059 (1870) (repealed); Bank of Coushatta v. Patrick, 503 So.2d 1061, 1068 (La.App. 2d Cir.1987), writ denied; Boyle v. Fringe Facts, Inc., 414 So.2d 1333 (La.App. 2d Cir.1982); Magnolia Petroleum Co. v. Harley, 13 So.2d 84 (La.App. 2d Cir.1943); Stephens Co. v. Keigley, supra; Bonura v. Christiana Bros. Poultry Co. of Gretna, 336 So.2d 881 (La.App. 4th Cir.1976), writs refused.
A continuing guaranty is not revoked merely by notice to the creditor that a guarantor has sold his interest in a business entity to another who thereafter also signs a continuing guaranty. Texaco, Inc. v. State Hot Mix Corporation, and Magnolia Petroleum Co. v. Harley, both supra.
One who signs a contract is presumed to know its contents. Bank of Coushatta v. Patrick, supra. Courts are not created to relieve one of a bad bargain. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); Tahoe Corp. v. P & G Gathering Systems, 506 So.2d 1336, 1345 (La. App. 2d Cir.1987).
Whatley stipulated that he did not instruct Harper to inform CNB and that CNB was not notified by anyone, that Whatley desired or intended to terminate his Continuing Guaranty. It is stipulated that Whatley never informed Harper "of the other accounts," which, in our opinion, means accounts other than the obligation owed to the savings association in Texas, the only obligation of the partnership mentioned in the sale by Whatley to his partners, and apparently the only account of which Whatley informed Harper.
Even if we assume what we do not find, that is, that Harper represented both Whatley and CNB in 1985, we could not find Harper's "knowledge" imputable to CNB. As we appreciate the stipulation, Harper did not have "knowledge" of the continuing guaranty to CNB or of Whatley's contended "intent" to revoke it.
In an assumed, but not found, "dual" capacity as a member of the law firm that had represented CNB for years and as attorney for Whatley for the purpose of drafting and consummating the sale of his partnership interest, Harper had no specific duty either to Whatley to discover and advise him about the continuing guaranty, or to CNB to disclose the Whatley partnership sale. CNB was not involved and had no interest in the sale of Whatley's interest.
Whatley does not suggest that he hired Harper to perform any services other than drafting and consummating the sale of Whatley's partnership interest. These services were completed in 1985, long before CNB, through another member of Harper's law firm, sought to enforce the guaranty against the partners. In any event, mere disclosure of the sale of one's interest in a business entity is not notice of one's intent to revoke a continuing guaranty of the debt of that business entity.
*816 Whatley is presumed to know what documents he signed for CNB. He could have avoided liability under the guaranty by expressly revoking the guaranty before the partnership debt was incurred. The fact that he was not a partner when the debt was incurred is not material or controlling. See and compare Magnolia Petroleum Co. v. Harley, 13 So.2d 84, 87 (La.App. 2d Cir.1943); Texaco, Inc. v. State Hot Mix Corp., supra; Cudahy Foods Co. v. Rich Plan of Baton Rouge, Inc., 349 So.2d 894 (La.App. 1st Cir.1977), writ refused; Stephens Co. v. Keigley, supra.
Whatley also contends that the equitable doctrines of estoppel or laches should be applied. These doctrines are applicable only where the enforcement of the asserted right would work injustice after excessive and unreasonable delay and after reasonable reliance by another on the inaction that results in harm. Bonura, supra. Mere delay in enforcement alone is not sufficient.
We find no significant delay. There is also no evidence of either justifiable reliance or change in position by Whatley necessary to invoke these doctrines. American Bank & Trust Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35 (La.1967); Texaco, Inc., supra. Whatley failed to revoke the continuing guaranty for almost 17 months before the partnership incurred the debt. His inaction and his attempted revocation after the debt was incurred and demanded do not avail him.

DECREE
At Whatley's cost, the judgment is AFFIRMED.