473 So.2d 108 (1985)
HARDWARE WHOLESALERS, INC., Plaintiff-Appellant,
v.
Oswald GUILBEAU and Mabel Dupuis Guilbeau, Defendants-Third Party Plaintiffs-Appellees,
Country Home Center, Inc., Third Party Defendant.
No. 84-509.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
Rehearing Denied August 13, 1985.
*109 Broadhurst, Brook, Mangham & Hardy, Wayne A. Shullaw, Lafayette, for plaintiff-appellant.
Patrick L. Colomb, Lafayette, for defendant-appellee.
Beyt & Beyt, Janice Daigre Beyt, Lafayette, for defendants-appellees.
Before DOMENGEAUX, STOKER, and DOUCET, JJ.
DOMENGEAUX, Judge.
This appeal arises out of a lawsuit instituted by Hardware Wholesalers, Inc., plaintiff-appellant, against Oswald Guilbeau and Mabel Dupuis Guilbeau, defendants-appellees-guarantors, seeking the enforcement of a continuing guaranty of a corporate obligation. The district judge ruled in favor of the defendants-appellees and dismissed the plaintiff-appellant's suit with prejudice.
The plaintiff, Hardware Wholesalers, Inc., is a wholesale hardware cooperative with its principal office located in the State of Indiana. It supplies inventory to member retailers. In order to become a member of the plaintiff-cooperative the retailer must purchase stock in Hardware Wholesalers, Inc.
The defendants, Oswald Guilbeau and Mabel Dupuis Guilbeau, husband and wife, were the sole stockholders of Country Lumber Company, Inc. The defendants bought stock in Hardware Wholesalers, Inc. and on March 3, 1978, they executed a continuing guaranty in favor of Hardware Wholesalers, Inc. in which they personally guaranteed any debts which Country Lumber Company, Inc. might incur with Hardware Wholesalers, Inc.
The guaranty provided in part:
"This guaranty shall be a continuing, absolute and unconditional guaranty and shall remain in full force and effect until all such indebtedness, obligations, and liabilities shall be fully paid, provided, however, that upon written notice from the Guarantors to HWI, the Guarantors shall not be liable for any indebtedness, obligations, or liabilities of Debtor incurred after receipt by HWI of such notice."
On August 31, 1978, some six months after they executed the continuing guaranty, Mr. and Mrs. Guilbeau sold all of the stock and assets of Country Lumber Company, Inc. to Velma Guilbeau, Susie Guilbeau, Jerry Gros, and Douglas J. Brunet, their daughters and sons-in-law.
Subsequently, on January 10, 1979, the Articles of Incorporation of Country Lumber Company, Inc. were amended thereby changing the corporation's name to Country Home Center, Inc. The amendment to the corporation's articles were filed with the Secretary of State and the Clerk of Court on March 15, 1979. Shortly thereafter, Velma Guilbeau and Jerry Gros sold *110 all of their interest in the corporation to Roderick J. Fusilier and Cecile Fusilier.
A slowdown in business forced Country Home Center, Inc. to file for reorganization under Chapter 11 of the United States Bankruptcy Code. Unable to secure payment from Country Home Center on its invoices, the plaintiff made formal demand in writing to Oswald Guilbeau and Mable Dupuis Guilbeau, as guarantors, requesting payment of ONE HUNDRED TWENTY-EIGHT THOUSAND, EIGHT HUNDRED FIFTY-FIVE AND 90/100 ($128,855.90) DOLLARS, due and owing by Country Home Center, Inc.
On October 13, 1982, the plaintiff filed suit against Oswald Guilbeau and Mabel Dupuis Guilbeau seeking enforcement of the continuing guaranty the defendants had signed on March 3, 1978.
The defendants responded by filing an exception of "No Cause or Right of Action"; a general denial answer; and a third party demand against Country Home Center, Inc.
After a trial on the merits the district court judge ruled that the defendants, Mr. and Mrs. Guilbeau, were not liable on the continuing guaranty and dismissed the plaintiff's suit. The district judge's written reasons for judgment noted that despite the defendants' failure to provide the plaintiff with written notice of the revocation of the guaranty the guaranty had been revoked when Mr. and Mrs. Guilbeau sold their stock in Country Lumber Company, Inc. to their daughters and sons-in-law. The trial judge found that the evidence indicated that the Guilbeaus signed the guarantee with the intention of guaranteeing only the debts which Country Lumber Company, Inc. incurred while they were owners. The district judge was apparently persuaded to reach this conclusion by considering the testimony of Mr. Guilbeau where Guilbeau stated that he intended only to guarantee those debts that Country Lumber Company, Inc. contracted with Hardware Wholesalers, Inc. while he and his wife were sole owners of the company and that once the company was sold he had no further obligations to the creditors of Country Lumber Company. The district judge's decision was further influenced by the fact that the plaintiff's agent had been informed that Mr. and Mrs. Guilbeau were selling the business and that the name, nature, and location of the business changed with the change in ownership.
The plaintiff-appellant appeals the decision of the district court and cites as error the district judge's use of parol evidence to determine the intent of the parties to a written contract of guaranty when the wording of the contract is clear and unambiguous. The appellant further argues that inasmuch as the phrasing of the contract was clear and unambiguous the contract could only be extinguished in the mode established by its terms, i.e., by written notice to the plaintiff from the guarantors.
The appellant argues that the district judge erred when he admitted and considered parol evidence of Mr. Guilbeau's intent despite an objection by the appellant's attorney.
We are of the opinion that the appellant's contentions have merit and that the district judge erred in considering parol evidence to determine the intent of the parties to this contract of guaranty.
Contracts of guaranty are subject to the same rules of interpretation as contracts in general. Ferrel v. South Central Bell Telephone Company, 403 So.2d 698 (La.1981).
Louisiana Civil Code Article 1945[1] establishes the guidelines courts must use when interpreting contracts. That Article provides:
"Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them.

*111 Upon this principle are established the following rules:

FirstThat no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;

SecondThat courts are bound to give legal effect to all such contracts according to the true intent of all the parties;

ThirdThat the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;

FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract."
The jurisprudence adds the following rules for the interpretation of contracts:
"The courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. La.C.C. art. 1945; Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); Campesi v. Margaret Plantation, 417 So.2d 1265 (La.App. 1st Cir. 1982), writ denied 422 So.2d 163 (La. 1982). The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. La.C.C. art. 2276; Tauzin v. Claitor, 417 So.2d 1304 (La.App. 1st Cir. 1982), writ denied, 422 So.2d 423 (La. 1982). However, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, or fraud is alleged, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. Dixie Campers, Inc. v. Vesley Company, 398 So.2d 1087 (La.1981); Carter's Insurance Agency, Inc. v. Franklin, 428 So.2d 808 (La.App. 1st Cir.1983)."
Quintana Petroleum Corporation v. Alpha Investments Corporation, 435 So.2d 1092 (La.App. 1st Cir.1983).
The contract of guaranty at issue in this case states that the guaranty would remain in full force and effect until all obligations due and owing were fully paid or until the guarantors provided written notice revoking the contract. This provision is clear and unambiguous and is susceptible of only one interpretation. We hold that the district judge is in error for admitting and considering parol evidence of the parties' intent in confecting this contract when the wording of that contract is clear and unambiguous.
Having determined that the district judge was in error for having used parol evidence to interpret the intent of the parties to a contract, we must now analyze the contract provisions to ascertain the true intent of the parties.
The law is well settled that a continuing guaranty remains in force until revoked by the guarantor, expressly or impliedly; or its effectiveness is extinguished in some other mode recognized by law. Magnolia Petroleum Company v. Harley, 13 So.2d 84 (La.App. 2nd Cir.1943); Bonura v. Christiana Brothers Poultry Company of Gretna, 336 So.2d 881 (La.App. 4th Cir. 1976), writs refused, 339 So.2d 11 (La. 1976), 339 So.2d 26 (La.1976).
This guaranty agreement stated that it remained in effect until all obligations had been paid or until written notice of revocation was received by the plaintiffs. Thus, the contract expressly authorized that it could be (1) extinguished by payment of the principal obligation, or (2) revoked by written notice. Mr. and Mrs. Guilbeau, the guarantors, personally guaranteed the debts of Country Lumber Company, Inc., a corporation. That corporation remained in existence following the sale of the corporation by Mr. and Mrs. Guilbeau to their daughters and sons-in-law. After the sale took place, the Articles of Incorporation of *112 Country Lumber Company, Inc. were amended to change the corporation's name to Country Home Center, Inc. However, the name change had no effect upon the existence of the corporate entity, thus, the entity for which Mr. and Mrs. Guilbeau agreed to guarantee the debts was still in existence. Furthermore, that entity continued to purchase products on credit from the plaintiff company, therefore the indebtedness of the corporate entity to the plaintiff was never extinguished by payment of the entirety of the principal obligation. Additionally, Mr. and Mrs. Guilbeau failed to give written notice to the plaintiff that they wished to revoke the continuing guaranty.
We therefore hold that inasmuch as the wording of the contract of guaranty is clear and unambiguous and as that contract could only be extinguished by payment of the principal obligation or revoked by written notice of revocation by the guarantors, the failure of the guarantors to do either results in the continuing existence of the guaranty. We find that the defendants Oswald Guilbeau and Mabel Dupuis Guilbeau are indebted to the plaintiff for any debts incurred by Country Home Center, Inc.
In view of the joint motion to effect setoff filed into evidence, the principal demand of plaintiff is reduced from the original demand of ONE HUNDRED TWENTY-EIGHT THOUSAND, EIGHT HUNDRED FIFTY-FIVE AND 90/100 ($128,855.90) DOLLARS to an amended sum of SEVENTY-NINE THOUSAND, NINE HUNDRED FORTY AND 81/100 ($79,940.81) DOLLARS.
For the above and foregoing reasons the decision of the district court is reversed. It is now Ordered that there be judgment for plaintiff and against the defendants, in the amount of SEVENTY-NINE THOUSAND, NINE HUNDRED FORTY AND 81/100 ($79,940.81) DOLLARS, with legal interest thereon from date of judicial demand until paid. All costs to be assessed against defendants, Oswald Guilbeau and Mabel Dupuis Guilbeau.
REVERSED AND RENDERED.
NOTES
[1] Louisiana Civil Code Art. 1945 was repealed effective January 1, 1985, pursuant to the revisions of the Louisiana Laws of Obligations. For the subject matter of former La. C.C. Art. 1945, see La.C.C. Arts. 2045 and 2046.