490 So.2d 753 (1986)
CENTURY 21 GATEWAY REALTY, INC. and John Knight Development, Inc., Plaintiffs-Appellees,
v.
PARD, INC., Defendant-Appellant.
No. 85-714.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
Charles R. Minyard and Mary G. Chappuis, Lafayette, for defendant-appellant.
Michael D. Skinner, Dennis J. Vidrine and J. Jeffery Bellamy, Lafayette, for plaintiffs-appellees.
Before FORET, PLANCHARD[*] and McNULTY,[*] JJ.
*754 FORET, Judge.
This is a suit brought by a realty company to collect a commission on the sale of real estate. Plaintiff, Century 21 Gateway Realty, Inc., filed suit against defendant, Pard, Inc., to collect a commission on the sale of certain real estate. Plaintiff also sought and obtained the sequestration of money deposited in defendant's bank account. Defendant filed a motion to dissolve the writ of sequestration which the trial court granted. Defendant also filed a reconventional demand for damages and attorney's fees for the wrongful issuance of the writ. After trial on the merits, the trial court rendered judgment in favor of plaintiff, Century 21, on its main demand, awarding it $38,500 with legal interest from date of judicial demand and $5,604 in attorney's fees. The court rendered judgment in favor of defendant on its reconventional demand and awarded it $2,856, representing the amount expended on attorney's fees in obtaining the dissolution of the writ of sequestration. Defendant has appealed the decision of the trial court which held it liable for the commission and attorney's fees. Plaintiff has answered the appeal asking for an increase in attorney's fees for prosecution of the suit at trial level and on appeal.
This appeal raises the following issues:
(1) Whether the trial court erred in determining that there had never been an agreement between Pard and Century 21 that no commission would be due under the listing agreement for a sale to the eventual purchaser; and,
(2) Whether the attorney's fees awarded by the trial court to plaintiff should be increased.

FACTS
Pard, Inc., defendant in the present action, owned real property (situated in Lafayette) in which it operated a nightclub known as "After Dark." In an attempt to sell the property, Pard listed it for sale with Van Eaton and Romero, Inc., a Lafayette realty company. The term of the listing agreement was six months, and it terminated in March of 1981 without a sale of the property. Shortly thereafter, Van Eaton and Romero supplied the president of Pard, Rogers Sonnier, with a list of persons whom they had contacted during the term of the listing agreement, informing Sonnier that Van Eaton and Romero might be entitled to a commission on any sale to those listed by virtue of the legal doctrine of procuring cause. Van Eaton and Romero advised Mr. Sonnier that, in the event he listed the property with any other realty company, it would be prudent to exclude those persons listed in order to insure against Pard becoming liable for a double commission.
On May 27, 1981, Pard listed the property with another realty company, Flagg Properties, Inc. The list of names which Van Eaton and Romero had provided was incorporated into the listing agreement with Flagg Properties as exclusions. Flagg Properties' attempt to market the property was unsuccessful and, on November 30, 1981, the Flagg Properties' listing agreement expired.
On April 28, 1982, Pard entered into an exclusive right to sell listing agreement[1] with Century 21 Gateway Realty, Inc., the plaintiff in this suit. The listing agent, Rosie Roy, had been a part-time employee of Pard for a number of years, working at "After Dark" in a number of positions, including waitress and bartender. Ms. Roy had received her real estate license in August of 1981 and had begun working as a realtor for Century 21 in late December of 1981. During this time, she had continued her employment with Pard and remained in her part-time position at the nightclub until it closed on December 31, 1982.
*755 In the spring of 1982, Ms. Roy had solicited the real estate listing from several members of Pard's board of directors. At Pard's board of directors' meeting of April 19, 1982, the board authorized Rogers Sonnier to enter into a listing agreement with Century 21 through its listing agent Rosie Roy. Informed of the board's decision, Ms. Roy prepared a listing agreement which included several attachments but, importantly, did not contain any exclusions of potential purchasers. This listing agreement was executed by Rogers Sonnier, as President of Pard, and became effective on April 28, 1982.
Apparently Sonnier and Roy agreed that there was little chance of making a sale of the property in the Lafayette market and that marketing the property to out-of-state investors was the approach most likely to be successful. Accordingly, Ms. Roy compiled data for a presentation to be made at a sales meeting which took place in Texas in June of 1982. She received two offers at this meeting and, on June 28, 1982, presented these offers to Pard's board of directors. The board, however, rejected the offers.
On October 28, 1982, Pard, through its president, Sonnier, entered into an agreement extending the listing agreement with Century 21 to April 28, 1983. On December 23, 1982, Pard and Century 21 again amended the listing agreement, reducing the price of the property from $1,000,000 to $750,000 and agreeing to changes in the manner in which the property would be marketed. No exclusions of potential purchasers were included in the listing agreement at this time. Century 21 continued to market the property in accordance with the amended listing agreement.
On January 13, 1983, Pard sought and obtained a letter of intent from Kenneth Guilbeaux in which Guilbeaux agreed to purchase the property for $550,000 plus commissions. This agreement was entered into without consulting Century 21. On January 17, 1983, Pard entered into a contract to sell with Guilbeaux, and, on February 18, 1983, Pard executed a credit sale of the property to Kenneth Guilbeaux.
No commission was paid on the sale to Century 21 or any other realty company. Century 21 filed suit on February 24, 1983, seeking to collect a commission on the sale and reasonable attorney's fees. Century 21 also sought and obtained an order sequestering funds received by defendant and deposited in defendant's bank account. This writ of sequestration was dissolved by the court on March 18, 1983, and the trial court awarded damages for the writ's wrongful issuance. The trial court rendered judgment in favor of plaintiff, Century 21, on its demand awarding it $38,500 with legal interest from date of judicial demand and $5,604 in attorney's fees.

DID THE PARTIES AGREE TO EXCLUSIONS FROM THE LISTING AGREEMENT?
The issue before the trial court was whether Century 21 and Pard had agreed to exclude from the listing agreement certain potential purchasers, including the eventual purchaser of the property, Ken Guilbeaux. The trial court determined that there had never been any agreement to exclude Guilbeaux or any other eventual purchaser from the listing agreement. In so deciding, the trial court chose to accept the testimony of Century 21's listing agent, Rosie Roy, over that of Pard's president and its board of directors. The listing agreement, itself, contained no exclusions. At trial, Ms. Roy testified that there was no discussion of exclusions at the time the listing agreement was negotiated nor at any time subsequent to that. Pard's president, Rogers Sonnier, testified that he and Ms. Roy had agreed that certain potential purchasers, including Guilbeaux, would be excluded from the listing agreement. Sonnier and the other board members maintained that subsequent to the signing of the listing agreement, Ms. Roy has assured them that these exclusions had been incorporated into the listing agreement. The trial court, however, chose to believe Ms. *756 Roy and, accordingly, rendered judgment in favor of Century 21.
An appellate court should not disturb a trial court's determination with respect to the credibility of witnesses absent an abuse of discretion. In the present case, the trial court was faced with two widely varying accounts of the salient facts. Its decision, necessarily, depended on its evaluation of the credibility of the witnesses testifying before it. The trial court did not abuse its discretion in making this evaluation.
Pard's attorney has argued that due to the existence of an agreement between Pard and the eventual purchaser of the property, Guilbeaux, in which Guilbeaux agreed to pay any commission resulting from the sale, the members of Pard's board of directors had no interest in the matter under litigation and, therefore, no reason to fabricate. What this argument overlooks is that in one of the documents executed in connection with the sale, Pard warranted to Guilbeaux that Century 21 had no right to a commission. One member of Pard's board of directors testified that it was his belief that Pard would have to pay the commission if they lost the present action. This witness, at least, did not believe that Pard was insulated from liability for any commission that Century 21 might be entitled to. Whether Guilbeaux or Pard would be liable for Century 21's commission was a matter of legitimate dispute. Given the uncertainty of Pard's legal position in this regard, the argument that their lack of interest in the outcome of this litigation insured the truthfulness of the members of Pard's board of directors is, at best, unconvincing.

ATTORNEY'S FEES
The listing agreement contained a stipulation entitling Century 21 to reasonable attorney's fees in the event it became necessary for Century 21 to retain an attorney to secure payment of its real estate commission. At the beginning of trial, Century 21 and Pard stipulated as to the amount of attorney's fees. It was stipulated that, as of the morning of the trial, Century 21 was entitled to $5,594.00 in attorney's fees. The trial court awarded the amounts stipulated by the parties at the start of trial. In doing so, the trial court apparently failed to include attorney's fees for the one and one-half day trial. Accordingly, we will increase the amount of attorney's fees awarded to plaintiff for the prosecution of the present action at the trial level by $1500. Counsel for Century 21 also asks for additional fees for the defense of this appeal. An increase in attorney's fees is usually awarded where a party who was awarded attorney's fees at the trial level is forced to and successfully defends an appeal. Norris Rader, Inc. v. Dartez, 453 So.2d 1009 (La.App. 3 Cir. 1984); Huval Tractor, Inc. v. Journet, 413 So.2d 978 (La.App. 3 Cir.1982), writ denied, 420 So.2d 446 (La.1982). We will award plaintiff an additional $1,000 for prosecution of this appeal.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed except to amend it to increase the award of attorney's fees to $8,094.00.
All costs of this appeal are assessed against defendant-appellant.
AFFIRMED AS AMENDED.
NOTES
[*] Judge Arthur J. Planchard, of the 14th Judicial District Court, and Judge Michael J. McNulty, Jr., of the 16th Judicial District Court, participated in this opinion by appointment of the Louisiana Supreme Court as Judges Pro Tempore.
[1] As indicated by its name, an exclusive right to sell listing agreement gives a realtor the exclusive right to sell and, as a result, the realtor is entitled to a commission on any sale of the property made during the term of the agreement regardless of its role as a procuring cause (at least in the absence of any exclusions).