584 So.2d 1174 (1991)
SECURITY FIRST NATIONAL BANK, Plaintiff-Appellee,
v.
James C. RICHARDS, et al., Defendants-Appellants.
No. 89-818.
Court of Appeals of Louisiana, Third Circuit.
July 16, 1991.
As Corrected On Rehearing September 13, 1991.
*1175 Gist, Methvin, Hughes & Munsterman, John W. Munsterman, Alexandria, for plaintiff-appellee.
Gold, Weems, Bruser, Sues & Rundell, Henry Bruser, III, Provosty, Sadler & de Launay, H. Brenner Sadler, H. Bradford Calvit, Charles Wagner, and Wm. Wolfe, Alexandria, for defendants-appellants.
Gary W. Partney, Stafford, Stewart, & Potter, Larry Stewart, Alexandria, for defendant-appellee.
Before YELVERTON, KNOLL and KING, JJ.
KING, Judge.
This appeal presents for consideration the correctness of a judgment in a suit involving the interpretation of several contracts.
The main demand of the plaintiff, Security First National Bank (hereinafter the Bank), was based on eight contracts of continuing guaranty signed by the various defendants. Most of the remaining contracts in contention were pleaded by the individual guarantors either in defense of the main demand, or by way of the assertion of rights they claimed to have had against the remaining guarantors.
After a trial on the merits, judgment was rendered in favor of the Bank and against defendants, on the main demand, and against various defendants on the incidental demands. These disputes, along with some incidental legal questions, make up the issues on this appeal. We affirm in part, amend in part, and, as amended, affirm.

FACTS
The case arose out of the financing of KLAX Television Station in Alexandria, Louisiana. In July, 1981, Cypress Communications Corporation (hereinafter Cypress) was formed for the purpose of acquiring, constructing, and operating KLAX. The original shareholders of Cypress were A. Mixon Bankston, James A. Bankston, John R. Boyle, James C. Richards, F.A. Little, Jr., Ben D. Johnson, Sr., Dorothy F.A. Hagman, and the Estate of A.D. Taylor. In order to fund this venture, the shareholders requested a venture capital loan from the Bank. The Bank approved an $800,000.00 finance package consisting of a $500,000.00 letter of credit and a $300,000.00 line of credit. As security for the Bank's commitment, and the future advances to be made incidental thereto, each of the shareholders executed a Continuing Guaranty and Collateral Pledge Agreement in the amount of $200,000.00.
In March, 1982, Little sold his shares in Cypress to Carolyn Aldredge. At the time of purchasing Little's stock, Aldredge executed her own personal continuing guaranty in favor of the Bank in the amount of $200,000.00, to secure the debt of Cypress. The Bank then released Little from liability under his personal continuing guaranty and physically returned his continuing guaranty to him.
In the summer of 1982, Hagman sold her Cypress stock back to Cypress for $17, *1176 500.00. Hagman's stock was then reissued by Cypress in five equal portions to the Bankstons, Aldredge, Boyle, and the Estate of Taylor.
In 1984, the Bankstons entered into an agreement with Johnson and Richards whereby Johnson and Richards took over the Bankstons' interest in Cypress and the Bankstons assumed certain debts and were relieved of certain debts. The Bankstons purchased assets from Cypress, but Johnson, Richards, and Cypress agreed to hold the Bankstons harmless and indemnify the Bankstons as to any liability which might arise incident to the continuing guaranties executed by the Bankstons in favor of the Bank.
In 1987 the $800,000.00 note became due. Cypress defaulted on its loan and was unable to pay the note or the interest. As a result, the bank sued Richards, M. Bankston, J. Bankston, Boyle, Johnson, Hagman, and Aldredge, seeking a judgment against each for the full amount of the continuing guaranties signed by each guarantor. The defendants each denied liability for the full amount of the $200,000.00 guaranty.
The Bankstons filed a cross-claim against Johnson and Richards. The Bankstons sought indemnification for their liability to the Bank under the terms of an indemnification and hold harmless agreement executed between the four defendants.
Johnson answered the suit and sought credit for $105,397.15 that he claimed to have already paid the Bank in this matter. He later amended his answer seeking an additional increase in the credit of $41,951.00 for a total credit of $147,348.15.
Hagman answered the suit and claimed that the Bank had agreed to cancel her continuing guaranty and release her from any liability owed to plaintiff. She filed a cross-claim against the remaining defendants wherein she sought indemnification of her liability to the Bank as a result of an agreement between herself and Cypress upon the sale of her shares of stock to Cypress.
The case was tried on the merits. The trial court rendered judgment in favor of the Bank and against Richards, M. Bankston, J. Bankston, Boyle, Johnson, and Hagman for the sum of $200,000.00 each. The Bankstons were found by the trial court to be entitled to indemnification from Johnson and Richards, in solido, for all amounts for which they would be liable to the Bank or Hagman. This included an award of $12,500.00 for attorney's fees.
The trial court found that Hagman was entitled to indemnification from Richards, M. Bankston, J. Bankston, Boyle, Johnson, and Aldredge, in solido, for all amounts for which she was liable to the Bank. As previously stated, the trial court found Hagman liable to the Bank on the continuing guaranty that she had signed.
The trial court further decreed that Richards, M. Bankston, J. Bankston, Boyle, Johnson, Hagman, and Aldredge had rights of contribution from each other; that they had rights to subrogation of the claims of the Bank against Cypress upon payment of sums due the Bank; and, that the rights of contribution and subrogation in favor of Hagman and the Bankstons should inure to the benefits of those indemnitors who made payment of those indemnities.
Johnson's claim for credit was denied. The Court assessed all costs to Richards, Boyle, Johnson, and Aldredge, in solido, and stated that any other claims not recognized in the judgment were specifically denied.
The two Bankstons, Johnson, and Hagman timely appealed. Richards, Boyle, and Aldredge did not appeal.

ISSUES
The four appellants raise the common issue on this appeal that the Bank was not entitled to a judgment of $200,000.00 against each defendant-guarantor, but rather that the Bank was limited in recovery to the collective amount of $200,000.00. Johnson and the Bankstons raise the issue that they do not owe indemnity to other shareholders, in solido, but rather, for their virile share. Johnson also contends that he should be allowed a credit on his liability to the Bank of $147,348.15 because he has *1177 already paid this amount to the Bank. These three appellants also contend that the release of certain guarantors is a bar to subsequent recovery against the remaining guarantors.
Hagman raises the additional issue that the Bank had cancelled Hagman's continuing guaranty, and that she was therefore released from any obligation to the Bank.
The Bankstons raise the issue as to whether they are entitled to an increase in the amount of attorney's fees awarded by the trial court for the cost of defending Johnson's appeal.
We affirm in part, amend in part, and increase the attorney's fees for the Bankstons on appeal by an additional $2,500.00.

LAW AND DECISION
All defendants raise the issue of whether the Bank was entitled to a judgment against each of them for $200,000.00, rather than a total judgment of $200,000.00. The Bankstons, Johnson, and Hagman contend that they are only indebted to the Bank for the total sum of $200,000.00 and not for the sum of $200,000.00 each.
We affirm the trial court's decision that each guarantor is obligated to pay up to the limit of his individual guaranty. First Nat. Bank v. Green Garden Processing, 371 So.2d 1294 (La.App. 3 Cir.1979), aff'd, 387 So.2d 1070 (La.1980).
In Green Garden, three stockholders signed separate, but identical continuing guaranties, each limited to $86,350.00, to secure a bank loan to a corporation. Each guarantor bound himself in solido. One guarantor received a discharge in bankruptcy and the bank released another guarantor for $33,000.00, with reservation of its rights against the remaining guarantor. The trial court rendered a judgment against the remaining guarantor for $33,000.00. This Court amended the trial court's judgment and found that the remaining guarantor was liable in solido with the corporation. This Court increased the liability of the remaining guarantor to two-thirds of the debt due by the corporation by holding that the bank's rights against the remaining guarantor was for only two thirds of the principal amount of the continuing guaranty.
The Supreme Court disagreed with these conclusions and stated that the release of one of the guarantors did not affect the remaining guarantor and, thus, the bank could recover the full amount set forth in each continuing guaranty. The Supreme Court affirmed, however, noting that it was unable to increase the dollar amount awarded by the Court of Appeal because the bank did not appeal. First Nat. Bank of Crowley v. Green Garden, 387 So.2d 1070 (La.1980). Justice Dixon stated in his concurring opinion that it appeared to him "that the bank, by the three separate contracts of continuing guaranty, sought and received as much security as could be obtained by each guarantor, up to the amount of the limit expressed in each guaranty." Id. at 1074. Also, Justice Calogero in his dissenting opinion interpreted the majority opinion in Green Garden as a conclusion that the three guarantors bound themselves for $86,350.00 each, equaling a gross exposure among them of $259,050.00. Id. at 1077.
The defendants argue that the decision of the Supreme Court in Louisiana Bank and Trust Co., Crowley v. Boutte, 309 So.2d 274 (La.1975), is in their favor. In Boutte, the Supreme Court determined that the four guarantors who signed the same continuing guaranty were solidarily liable for the total amount of the guaranty, and the bank could not multiply the amount of the continuing guaranty by the number of guarantors who executed it. That case is clearly distinguishable from the present case where eight guarantors each executed eight separate and individual guaranties, instead of eight guarantors signing one guaranty.
Appellants claim that their intent in signing the continuing guaranties was that they would only be liable for the collective amount of $200,000.00. However, M. Bankston's testimony confirms that the guarantors clearly understood that each was liable for $200,000.00, and that they knew that the eight continuing guaranties *1178 totaled twice the amount of the requested loan.
"Q. Your recollection is that there was anticipated an $800,000.00 financing package from Security Bank?
A. I believe that's right.
Q. Okay. What's the date of that letter?
A. Uh ... July the 7th, 1981.
Q. And at the time how many Continuing... how many $200,000.00 Continuing Guaranties was Security Bank requesting as a part of this loan package?
A. It was from each of the people listed here, which is 1, 2, 3, 4, 5, 6, 7, 8.
Q. It's eight $200,000.00 continuing guaranties (interrupted)
A. Eight $200,000.00, that's correct.
Q. That would be, if I'm not mistaken, twice as much as the loan ... the loan (interrupted)
A. A million, six. Yes.
Q. Ok. And you entered into this agreement ... with all of the other stockholders at the time?
A. That's correct.
Q. Ok. And to the best of your knowledge did each of the stockholders ... let me take that back. To the best of your knowledge, are all of the persons listed in Paragraph 1, sub (b), on page 2 of that letter, stockholders of Cypress Communications, or were they stockholders at that time?
A. They were at one time ... that that time.
Q. And all those persons, to the best of your knowledge, signed the commitment letter?
A. That's correct.
Q. And each agreed to put up a $200,000.00 guaranty?
A. That's my understanding."
We find that the trial court correctly determined that plaintiff was entitled to a judgment of $200,000.00 from each defendant.
The next issue raised is whether the trial court erred in awarding in solido indemnity to Hagman and to the Bankstons. When Hagman sold her shares of stock to Cypress a document was executed that "relieved, released, and discharged" her from any liability on her continuing guaranty that she executed in favor of the Bank. The Bank was not a party to this agreement.
The document that was given to Hagman by the seven remaining shareholders does not use the word indemnify; however, reading it as a whole, the document evidences an intent by the parties to indemnify Hagman for her liability under the guaranty executed by her in favor of the Bank. The language used in the document gives the clear impression that Hagman is discharged of any liability owed to plaintiff as pertaining to her continuing guaranty, and if obligations were incurred because of her guaranty the shareholders of Cypress would take care of the obligation for Hagman or reimburse her for any liability which she might have to pay.
However, the trial court did err in finding that each party that executed the document agreed to indemnify Hagman in solido. The words "solidary" or "in solido" are not used in the document; nor is there a clear expression that the parties intended to be bound solidarily. La.C.C. Art. 1796 states that a solidary obligation is not presumed, but rather arises from a clear expression of the parties' intent or from the law. Further, this Court stated in Hardy v. Whitney, 480 So.2d 766 (La.App. 3 Cir. 1985), that, unless there is a document which contains a clear expression that the parties intend to be bound solidarily, the obligation of the parties is considered to be joint. Thus, in the present case, the shareholders must indemnify Hagman, but they are only jointly liable for her debt rather than solidarily liable.
The Bankstons, Johnson and Richards executed an agreement to hold harmless and indemnify, as part of a transaction between the four of them, wherein Johnson and Richards acquired all of the Bankstons' stock in Cypress and the Bankstons purchased assets from Cypress, assumed certain debts of Cypress, and were relieved of certain debts of Cypress.
The hold harmless and indemnity agreement executed between the Bankstons, *1179 Johnson and Richards was a reciprocal agreement wherein the Bankstons agreed to hold harmless and indemnify Johnson and Richards for any liability they might have incident to continuing guarantys executed by them in favor of Louisiana Savings or Union Bank, and Johnson and Richards agreed to hold harmless and indemnify the Bankstons for any liability which they might have incident to their continuing guarantys executed in favor of the Bank which is the plaintiff in the present case.
Johnson argues that he only agreed to indemnify the Bankstons severally, along with Richards and Cypress, and that therefore he is liable only for his virile share rather than solidarily liable. Johnson contends that the inconsistencies between the buy/sell agreement, which is silent on the issue of solidarity, and the indemnity agreement, which specifies that Johnson's obligation is in solido, create an ambiguity that should be construed in favor of Johnson, as the Bankstons were the parties that requested the preparation of the documents.
We find no ambiguity between the documents, and, thus, we find that the hold harmless and indemnity agreement clearly sets forth that the parties were to be solidarily liable for any debts which resulted from the previously executed continuing guaranties. Thus, we find that Johnson and Richards are liable, in solido, for indemnification to M. Bankston and J. Bankston.
Johnson also contends that he should be allowed a credit for payment of $147,348.15 to the Bank. Johnson claims that he paid $105,397.15 to the Bank on his $200,000.00 guaranty and that the Bank seized a certificate of deposit belonging to him in the amount of $41,951.00. However, the certificate of deposit was found by the trial court to be unrelated to Johnson's liability to plaintiff. The certificate of deposit was issued by the Bank to Winnfield Life Insurance Company (hereinafter Winnfield) which pledged it to secure a $60,000.00 loan to Cypress. This was a different debt. There was no indication by Winnfield that the proceeds from the certificate of deposit were to be imputed or credited to Johnson's personal liability to the Bank.
Winnfield also issued a check to the Bank in the amount of $105,397.15. This check was accepted by the Bank for the purpose of issuing a bank money order to secure Johnson's guaranty in the amount of the accrued interest owed on the debt of Cypress. Johnson had given plaintiff an additional guaranty in the amount of $105,397.15 for the accrued interest on the debt of Cypress, and the $105,397.15 check was cash collateral for that guaranty. Thus, we find that Johnson's claim for credit is without merit as the $105,397.15 check and the $41,951.00 certificate of deposit were not intended to be used to satisfy Johnson's personal liability on his $200,000.00 guaranty to the Bank.
Johnson further argues that the release of guarantors bars subsequent recovery against the remaining guarantors, and thus, all guarantors should be released. La.C.C. Art. 1803 states:
"Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.
"Surrender to one solidary obligor of the instrument evidencing the obligation gives rise to a presumption that the remission of the debt was intended for the benefit of all the solidary obligors."
The Supreme Court has ruled that, under a continuing guaranty providing that a bank might release or discharge guarantors without notice to other guarantors, a bank had a right to release guarantors as it deemed appropriate without affecting its right to full recovery from remaining guarantors up to the dollar limit set in the contracts of guaranty. First Nat. Bank of Crowley v. Green Garden, supra. The Bank has identical legal rights under the language of the continuing guarantys in the present case.
*1180 Johnson argues that plaintiff's release of Little, Taylor, and Hagman should release the other guarantors. Conversely, the Bank did not release Hagman from her liability, nor did the Bank release the Estate of Taylor from its liability, but rather, the Bank did not choose to sue the Estate of Taylor. The Bank released Little from his debt, but another guarantor was substituted in his place. For these reasons, we find that this claim by Johnson is without merit.
Hagman contends that the Bank released her from her $200,000.00 continuing guaranty. We agree with the trial court that the evidence does not support any extinguishment of that obligation.
The law is well settled that a continuing guaranty remains in force until revoked by the guarantor, expressly or impliedly; or its effectiveness is extinguished by some other mode recognized by law. Stephens Co. v. Keigley, 487 So.2d 177 (La. App. 3 Cir.1986). This Court found in Stephens that it is the responsibility of the guarantor to cancel the guaranty agreement and, further, to prove the cancellation.
Hagman claims that when she sold her shares of stock back to Cypress she was released from any debt or liability on behalf of Cypress as well as the continuing guaranty executed by her for Cypress. Hagman explained that she did not personally make a request that the Bank release her from her continuing guaranty, because she understood that Richards, on behalf of Cypress, was to do that for her. The fact that Hagman thought she was released from her liability after the sale of her stock to Cypress and that she, unfortunately, relied on Richards to effectuate her release does not release Hagman from her liability to the Bank. Her continuing guarantee by its terms continued in full force and effect until written notice to the Bank of its discontinuance, something which did not occur in this case. Cf. First Acadiana Bank v. Bieber, 582 So.2d 1293 (La.1991). Hagman further argues that the Bank had knowledge of her release request as reflected by the minutes of a meeting of the Bank's Executive Committee; however, a memo regarding the loan, referred to in the minutes, was not put in evidence because it could not be found. The Bank denied any agreement to release her.
Hagman contends also that she was released by the sale of her stock in the same way Little was released. However, Little went about effecting his release very differently than Hagman. Little sold his shares of stock to Aldredge who, in turn, executed a continuing guaranty for $200,000.00 to the Bank, and the Bank then returned to Little his cancelled continuing guaranty after Little had made a specific request to the Bank for cancellation and return of his guaranty.
We agree with the trial court that Hagman did not present sufficient proof that she had cancelled her guaranty. For these reasons, we find that Hagman is indebted to plaintiff on her personal continuing guaranty. As we stated earlier, however, she is entitled to indemnification of this liability from the remaining Cypress shareholders.
The Bankstons contend that they are entitled to an increase in attorney's fees awarded by the trial court for defending the appeal of Johnson. The trial court awarded the Bankstons $12,500.00 in attorney's fees as the result of a hold harmless and indemnify agreement executed between the Bankstons and Johnson and Richards. The agreement states that Johnson and Richards agree to defend any claims or lawsuits that may arise out of said obligations, including the cost of reasonable attorney's fees and costs of court. The Bankstons answered Johnson's appeal and specifically alleged that they would incur additional attorney's fees in the defense of Johnson's appeal. An increase in attorney's fees is usually awarded where a party who was awarded attorney's fees by the trial court is forced to and successfully defend an appeal. Century 21 Gateway Realty v. Pard, Inc., 490 So.2d 753 (La. App. 3 Cir.1986); Mamou Farm Services v. Hudson Ins. Co., 488 So.2d 259 (La.App. 3 Cir.1986). The Bankstons did not seek additional relief against Johnson, other than an increase in attorney's fees on appeal. *1181 Because the Bankstons did successfully defend Johnson's appeal, we will award them an additional $2,500.00 in attorney's fees for appeal.
For the foregoing reasons, the judgment of the trial court is amended to provide that the liability of Richards, the two Bankstons, Boyle, Johnson, and Aldredge to indemnify Hagman as to her liability to Security First National Bank, is joint, rather than in solido. The judgment is further amended to increase the award of attorney's fees to $15,000.00. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are taxed against M. Bankston, J. Bankston, Johnson and Hagman.
AFFIRMED IN PART; AMENDED IN PART; AND, AS AMENDED, AFFIRMED.

ON REHEARING
PER CURIAM.
Defendant-appellant, Dorothy F.A. Hagman, has filed a Motion For Rehearing, supported by a brief from defendant-appellant, Ben D. Johnson, Sr., of our July 16, 1991 opinion. Appellate Courts have the power to correct their judgments without the necessity of granting a rehearing to do so. Phipps v. Chesson, 570 So.2d 470 (La. App. 3 Cir.1990); State, Department of Highways v. Eubanks, 345 So.2d 533 (La. App. 3 Cir.1977).
In our original opinion herein certain facts were incorrectly stated. We grant a limited rehearing for the purpose of correcting these facts, set forth in the language of the sentence located at the bottom of page 12 of our slip opinion. The sentence, as it originally read, was as follows:
[Editor's NoteThe corrections were incorporated for publication of this opinion].
For the reasons set forth above, we grant the motion for rehearing of defendant-appellant, Dorothy F.A. Hagman, for the limited purpose of clarifying the language of our original opinion, and amend our original opinion to change the sentence referred to as set forth above. In all other respects our original opinion is affirmed and the Motion For Rehearing of defendant-appellant, Dorothy F.A. Hagman, is denied.