7 So.3d 660 (2009)
J. Robert WOOLEY, As Commissioner of Insurance for the State of Louisiana
v.
Thomas S. LUCKSINGER, Michael D. Nadler, Stephen J. Nazarenus, Scott Westbrook, Michael K. Jhin, William F. Galtney, John P. Mudd, Executive Risk Indemnity, Inc., Executive Risk Management Associates, Executive Risk Specialty Insurance Co., Executive Liability Underwriters and Greenwich Insurance Co., Amcareco, Inc., Amcare Management, Inc.
J. Robert Wooley, Commissioner of Insurance for the State of Louisiana, in his Capacity as Liquidator of Amcare Health Plans of Louisiana
v.
Foundation Health Corporation, Foundation Health Systems, Inc., and Health Net, Inc.
J. Robert Wooley, Commissioner of Insurance for the State of Louisiana, as Liquidator for Amcare Health Plans of Louisiana, Inc, in Receivership
v.
Pricewaterhousecoopers, LLP.
Nos. 2006 CA 1140 to 2006 CA 1142.
Court of Appeal of Louisiana, First Circuit.
December 30, 2008.
Opinion Denying Rehearing and Rehearing En Banc February 13, 2009.
*662 Before CIACCIO, LANIER and CLAIBORNE, JJ.[1]
CIACCIO, J.
This action commenced with a claim in contract by J. Robert Wooley, Commissioner of Insurance for the State of Louisiana (the Commissioner), to recover a money judgment pursuant to a suretyship contract executed by Foundation Health Corporation. For the following reasons, we amend and affirm the trial court judgment on the Louisiana contract cause of action.

FACTS ON CONTRCT CLAIM
Foundation Health Corporation (FHC) owned and operated Foundation Health, a Louisiana Health Plan, Inc. (FHLHP), a health maintenance plan in Louisiana. In 1996, as the sole shareholder of FHLHP, FHC executed a guaranty of sufficient capital to ensure FHLHP maintained the minimum capital and surplus requirements required by Louisiana law. The guaranty provided:
This is to certify that Foundation Health Corporation, the sole shareholder of Foundation Health, a Louisiana Health Plan, Inc. ("FHLHP"), guarantees that it shall provide sufficient capital to FHLHP to ensure that FHLHP maintains the minimum amounts of paid capital and surplus required for an HMO [health maintenance organization] under Louisiana law. This guarantee shall remain in place until Foundation Health Corporation provides written notice of its cancellation to the Commissioner of Insurance, State of Louisiana, at least sixty (60) calendars [sic] days in advance of the effective date of cancellation.
At this time, the minimum capital and surplus requirement was $2 Million.
The guaranty was signed by Jeffrey L. Elder, Chief Financial Officer, FHC. Attached to the guaranty was a California All-Purpose Acknowledgment dated December 9, 1996, wherein a California Notary Public certified Elder acknowledged that he executed the guaranty.
During 1997, FHC merged with Health Systems International and became Foundation Health Systems, Inc. On June 23, 1997, Denise Brignac, then Financial Analysis Manager for the Louisiana Department of Insurance (LaDOI), requested that FHLHP and Foundation Health Systems, Inc., agree to the following:

*663 A parental guarantee ... executed between Foundation Health System, Inc. and Foundation Health, A Louisiana Health Plan, Inc. (Foundation Health), where Foundation Health System, Inc. guarantees Foundation Health will meet the statutory networth requirement as long as Foundation Health is a subsidiary of Foundation Health System, Inc., or until the HMO dissolves, whichever occurs first. The document must have the following wording: "non-cancelable by any party without the Commissioner's approval." (Emphasis added.)
On July 24, 1997, FHLHP responded to Ms. Brignac and rejected the proposed changes for the terms of the guaranty and its termination as follows:
Please note that a parental guarantee has been executed on behalf of the Plan. On December 9, 1996 Foundation Health Corporation issued a Guarantee which states:
This is to certify that Foundation Health Corporation [FHC], the sole shareholder of the Plan guarantees that it shall provide sufficient capital to the Plan to ensure that the Plan maintains the minimum amounts of paid capital and surplus required of an HMO under Louisiana Law. This guarantee shall remain in place until FHC provides written notice of its cancellation to the Commissioner of Insurance, State of Louisiana, at least sixty (60) calendar days in advance of the effective date of cancellation.
The Guarantee was signed by FHC's Chief Financial Officer.
At this date, no specific assets of the parent have been pledged with respect to the guarantee issued to the Plan. However, please note that Foundation Health Systems, Inc. is a large company. At [sic] March 31, 1997, the pro-forma total assets of Foundation Health Systems, Inc. were $4.1 billion, including $1.8 billion in cash and investments.
A copy of the 1996 parental guaranty was attached to the July 24, 1997 correspondence.
At this point in time, FHC had the option of retaining the definite sixty-day notice "bailout" provision that required a written notice or agreeing with LaDOI's request for a less definite provision that provided for termination based on the conditions precedent of (1) FHLHP not remaining a subsidiary of FHC, or (2) the dissolution of FHLHP, and (3) Commissioner approval. FHC consciously chose the sixty-day notice "bailout" provision. If FHC had chosen to agree to the proposed termination provision with Commissioner approval, the suretyship would have terminated only upon a sale and Commissioner approval, and this action would be without merit. It is reasonable to infer from FHC's rejection of the proposed changes that FHC determined that it was in its best interest to remain with the status quo.
In the absence of any further correspondence, we find that FHC declined the wording of the guaranty suggested by Ms. Brignac, and we find that the original guaranty executed by FHC remained in full force and effect.
After additional mergers, FHC became known as Health Net, Inc. (Health Net). In 1999, pursuant to the terms of a Stock Purchase Agreement (the sale), Health Net transferred all of the stock in the Louisiana health plan to AmCareco, Inc. (AmCareco), a corporation formed by a group of investors headed by Thomas S. Lucksinger. AmCareco was the sole shareholder of the Louisiana health plan, which became known as AmCare Health Plans of Louisiana, Inc. (AmCare-LA). Pursuant to La. R.S. 22:1004, AmCareco *664 filed a Form-A application with LaDOI for the acquisition of AmCare-LA, which was approved by the Commissioner on April 30, 1999.
AmCare-LA was placed in rehabilitation on September 23, 2002, and, on June 30, 2003, the Commissioner filed suit against Health Net seeking enforcement of the guaranty. The Commissioner also filed two other suits against the directors and owners of AmCare-LA and others seeking tort damages for breach of fiduciary duties, deceptive acts and practices, and fraud. All three of these suits eventually were consolidated for trial.
On November 4, 2005, the trial court rendered judgment in favor of the Commissioner and against Health Net, holding Health Net contractually liable on the guaranty for the total amount of compensatory damages awarded to the Commissioner in the Louisiana action in the amount of $9,511,624.19. Health Net appealed asserting the guaranty had expired as a matter of law and was extinguished by the sale between Health Net and AmCareco. The Commissioner maintains the guaranty had neither expired nor was terminated because the required cancellation notice never was given, and, consequently, Health Net is still liable under the guaranty.

LAW AND DISCUSSION[2]
A contract of guaranty is equivalent to a contract of suretyship.[3] La. R.S. 10:l-201(b)(39) currently provides, "`Surety' includes a guarantor or other secondary obligor."[4] The terms guaranty and suretyship may be used interchangeably. First National Bank of Crowley v. Green Garden Processing Co., Inc., 387 So.2d 1070, 1073 (La.1980); Commercial National Bank in Shreveport v. Keene, 561 So.2d 813, 815 (La.App. 2 Cir.1990); Guaranty Bank & Trust Co. v. Jones, 489 So.2d 368, 370 (La.App. 5 Cir.1986). The provisions of the Civil Code governing the contract of suretyship must be examined in testing whether there is a continuing guaranty. Custom-Bilt Cabinet & Supply, Inc. v. Qualit Built Cabinets, Inc., 32,441, p. 5 (La.App. 2 Cir. 12/8/99), 748 So.2d 594, 599.
Suretyship must be express and in writing. La. C.C. art. 3038. Suretyship cannot be presumed. An agreement to become a surety must be expressed clearly and must be construed within the limits intended by the parties to the agreement. Placid Refining Co. v. Privette, 523 So.2d 865, 867 (La.App. 1 Cir.), writ denied, 524 So.2d 748 (La.1988). Contracts of guaranty or suretyship are subject to the same rules of interpretation as contracts in general. Ferrell v. South Central Bell Telephone Co., 403 So.2d 698, 700 (La.1981); Eclipse Telecommunications Inc. v. Telnet Intern. Corp., XXXX-XXXX, p. 4 (La.App. 5 Cir. 10/17/01), 800 So.2d 1009, 1011.
Contracts have the effect of law on the parties and must be performed in good faith. La. C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. The intent is to be determined by the words of the contract when they are clear, explicit and lead to no absurd consequences. *665 La. C.C. art. 2046. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties, and the contract is interpreted by the court as a matter of law. La. C.C. art. 2046; Carter v. BRMAP, 591 So.2d 1184, 1187-88 (La. App. 1 Cir.1991).
Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. When a contract is clear and unambiguous, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol or other extrinsic evidence. La. C.C. art. 1848; Allain v. Shell Western E & P, Inc., 99-0403, p. 8 (La.App. 1 Cir. 5/12/00), 762 So.2d 709, 714; Hampton v. Hampton, Inc., 97-1779, p. 6 (La.App. 1 Cir. 6/29/98), 713 So.2d 1185, 1189.
The use of parol or other extrinsic evidence is proper only when a contract is found to be ambiguous after an examination of the four corners of the agreement, or when it is susceptible to more than one interpretation, or the intent of the parties cannot be ascertained. Sanders v. Ashland Oil, Inc., 96-1751, pp. 8-9 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1036, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. An ambiguous provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053. Any ambiguity in a contract is to be construed against the party who furnished the text. La. C.C. arts. 2056 and 2057; Esplanade, L.L.C. v. KMR Entertainment Co., 2007 WL 949473, XXXX-XXXX, p. 5 (La.App. 1 Cir. 3/30/07) (unpublished opinion); Seals v. Sumrall, XXXX-XXXX, p. 6 (La.App. 1 Cir. 9/17/04), 887 So.2d 91, 95. In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation; however, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor. La. C.C. art. 2057. See Myers v. Myers, 532 So.2d 490 (La.App. 1 Cir.1988).
Whether a contract is ambiguous is a question of law. Gaylord Container Corp. v. CNA Ins. Companies, 99-1795, p. 9 (La.App. 1 Cir. 4/3/01), 807 So.2d 864, 870, writ denied, 2001-2368 (La.12/07/01), 803 So.2d 31, reconsideration denied, 2001-2368 (La.1/25/02), 806 So.2d 664; Billiot v. Terrebonne Parish Sheriffs Office, 98-0246, pp. 9-10 (La.App. 1 Cir. 2/19/99), 735 So.2d 17, 24, writ denied, 99-1376 (La.7/2/99), 747 So.2d 22; Aycock v. Allied Enterprises, Inc., 517 So.2d 303, 309 (La. App. 1 Cir.1987), writs denied, 518 So.2d 512, 513 (La.1988).
Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. La. C.C. arts. 3035 and 3036; Custom-Bilt, 748 So.2d at 599; S. Litvinoff, 5 La. Civ. Law Treatise, The Law of Obligations, §§ 11.56, 12.47 and 20.8, pp. 275-76, 337 and 642-43. FHC, now Health Net, executed this suretyship contract and agreed to provide sufficient capital to FHLHP, now AmCare-LA, to ensure that the Louisiana health plan would maintain the minimum amount of paid capital and surplus required of an HMO under Louisiana law. Because this suretyship is given as required by legislation and/or subsequent administrative *666 act of LaDOI, this is a legal suretyship. La C.C. arts. 3043 and 3063 et seq. The purpose of this suretyship is to provide a method for maintaining the minimum capital and surplus requirements of AmCare-LA if it fails to do so and/or otherwise provide protection for AmCare-LA's obligees in the event of the insolvency and/or liquidation of AmCare-LA (obligor). La. R.S. 22:2010. The protected obligees of AmCare-LA are its enrollees, providers, employees and other creditors. La. R.S. 22:733 A(5) and B; 22:736 B and C; 22:737 D; 22:738 A; 22:2013 A(3) and (5) and E; 22:2010G,[5] and 22:657A and D.[6] Pursuant to these authorities, the Commissioner has a legal right to act on behalf of these obligees. These obligees had and/or have contracts with AmCare-LA that required various types of performance from AmCare-LA. In this legal posture, FHC, now Health Net, is a surety, FHLHP, now AmCare-LA, is an obligor and the enrollees, providers, employees, and other creditors are the obligees. AmCare-LA has failed to perform as it was obligated to do in its primary contracts with the protected creditors. La. C.C. art. 1994 et seq. The Commissioner has a legal right to collect money damages from Health Net pursuant to the suretyship contract for the benefit of these creditors (obligees) of AmCare-LA.
Louisiana Revised Statute 22:2010, entitled "Protection against insolvency", provides, in pertinent part:
C. Each health maintenance organization shall establish prior to the issuance of any certificate of authority, and shall maintain as long as it does business in Louisiana as a health maintenance organization, the following capital and surplus requirements:
....
(2) For each health maintenance organization which, by July 1, 1995, has filed its application for a certificate of authority with the commissioner as required by law, the minimum capital and surplus shall be:
....
(iii) Two million dollars by July 1, 1998.
According to the Louisiana Form-A Application, the original license for the Louisiana health plan was certified effective January 13, 1994.
The first sentence of the guaranty identifies the party executing the guaranty as FHC and states it will provide sufficient capital to FHLHP to ensure FHLHP maintains the minimum amounts of "capital and surplus required for an HMO under Louisiana law." Through acquisitions and mergers, FHC eventually became known as Health Net and FHLHP became known as AmCare-LA. The suretyship is express and in writing. The wording of the contract is clear and unambiguous. FHC, now Health Net, agreed to be the surety for the underlying obligations of FHLHP, now AmCare-LA, to maintain the minimum amount of capital required of an HMO under Louisiana law.
Furthermore, there is no dispute that at the time the guaranty was executed it was intended as a continuing guaranty. La. C.C. art. 3061 provides, in pertinent part:
A surety may terminate the suretyship by notice to the creditor. The termination does not affect the surety's liability for obligations incurred by the *667 principal obligor, or obligations the creditor is bound to permit the principal obligor to incur at the time the notice is received, nor may it prejudice the creditor or principal obligor who has changed his position in reliance on the suretyship.
The terms of the contract are clear and unambiguous in providing that the suretyship will continue until sixty days after written notice of cancellation is made to the Commissioner. The law is well-settled that a continuing suretyship remains in force until revoked. Custom-Bilt, 748 So.2d at 600; Hardware Wholesalers, Inc. v. Guilbeau, 473 So.2d 108, 111 (La.App. 3 Cir.1985); Magnolia Petroleum Co. v. Harley, 13 So.2d 84, 87 (La.App. 2 Cir.1943). In this posture, it is the responsibility of the surety (Health Net) to cancel the suretyship agreement, and further, to prove the cancellation. Id.; Security First National Bank v. Richards, 584 So.2d 1174, 1180 (La.App. 3 Cir.1991).
Health Net asserts that the execution of the sale with AmCareco extinguished its obligation under the suretyship contract because the sale provided that all intercompany agreements were terminated. This is not factually or legally correct. Health Net's obligation under the contract of suretyship is not an intercompany agreement; it is a legal suretyship contract to secure the obligation of AmCare-LA to maintain minimum statutory capital and surplus requirements for the ultimate benefit of its enrollees, providers, employees and other creditors.
LaDOI's knowledge of the sale did not terminate the suretyship. Notice to a creditor that a surety has sold its interest in a business entity to another does not constitute notice of revocation on a continuing suretyship to the creditors. Custom-Silt, 748 So.2d at 599-601; Bonura v. Christiana Bros. Poultry Co. of Gretna, Inc., 336 So.2d 881, 885-86 (La.App. 4 Cir.), writs refused, 339 So.2d 11, 26 (La. 1976); Security First National Bank, 584 So.2d at 1180; Commercial National Bank in Shreveport, 561 So.2d at 815. Under the clear, unambiguous and express terms of the contract of suretyship, Health Net was required to provide the Commissioner with sixty-days written notice for cancellation. LaDOI's knowledge of the execution of the sale pursuant to LaDOI's approval of the Form-A application did not satisfy the clear and unambiguous terms of the contract requiring written notice to the Commissioner sixty days before the suretyship was cancelled.
The contract of suretyship is enforceable. Health Net failed to meet its burden of proving it had properly revoked the suretyship. Health Net is legally bound by the terms of the suretyship.
The Commissioner's April 30, 1999 approval of AmCareco's Form-A application included the following condition, "The capitol [sic] of Foundation Health, a Louisiana Health Plan shall at all times remain at a minimum of $4,000,000.00 (Four Million dollars)." La. R.S. 22:3, La. R.S. 22:773, La. R.S. 22:2014 and La. Admin. Code Title 37, Part XIII, § 1307B4 authorize the Commissioner, upon a determination that the continued operation of an insurer may be hazardous to policyholders or the public, to increase an insurer's capital and surplus requirements. Nothing in the record indicates any person requested a hearing to challenge the enforcement of the additional condition on the Louisiana health plan.[7] Nevertheless, by the clear and unambiguous terms of the suretyship, Health Net is contractually obligated for the minimum capital and surplus amount *668 required by Louisiana law. La. R.S. 22:2010 C provides that, for an HMO that had filed an application for a certificate of authority by July 1, 1995, the minimum capital and surplus requirement of Louisiana law was $2,000,000.00 by July 1, 1998. This suretyship contract was executed in 1996 when the minimum capital and surplus requirement was $2,000,000.00 The 1999 increase in the minimum capital and surplus requirement cannot amend Health Net's contractual obligation in the preexisting suretyship contract without Health Net's consent, and the record on appeal does not reflect that such consent was given. Cf. U.S. ex rel. Landry v. National Surety Co. of New York, 191 La. 1017, 1065, 187 So. 9, 25 (La.1938). Accordingly, the trial court's award of $9,511,624.19 has no basis in law or fact and is clearly erroneous and excessive.
The facts in the record on appeal show that the losses of the enrollees, providers, employees, and other creditors of AmCare-LA exceeded $2,000,000.00. Thus, Health Net is contractually liable for the full amount of the guaranty.

DECREE
For the foregoing reasons, the judgment of the trial court on the Louisiana contract cause of action is affirmed as to the liability of Health Net under the contract of suretyship and is amended to reduce the amount of the award from $9,511,624.19 to $2,000,000.00 plus legal interest thereon from the date of judicial demand until paid. Costs in this action shall be determined, allocated, and taxed as provided for in Part XV of our opinion pertaining to the tort causes of action rendered this date in District Court Docket Number 499,737, 509,297, and 512,366, and all three Court of Appeal Docket Numbers XXXX-XXXX-XXXX and XXXX-XXXX-XXXX.
AMENDED AND AFFIRMED.

ON REHEARING
Before CIACCIO, LANIER and CLAIBORNE, JJ.[1]
PER CURIAM.
The plaintiff-appellee, hereinafter referred to as the Louisiana Receiver, has applied for a rehearing en banc and a rehearing pursuant to Uniform Rules  Courts of Appeal, Rules 1-5 and 2-18.

Rehearing En Banc
The Louisiana Receiver asserts that a rehearing en banc should be granted because "[n]umerous important public policy matters that directly affect the regulation of insurance companies and their management are implicated by the interpretation of this parental guarantee." Although the Louisiana Receiver has asserted this factual conclusion, he has failed to state what these "[n]umerous important policy matters" are for us to consider.
Rule 1-5 specifies that "[w]hen authorized by law, or when the court deems it necessary to promote justice or expedite the business of court, the court may sit ... en banc." The Louisiana Receiver has not cited a law, and we are not aware of one, that would require an en banc rehearing on any of the issues in this case. Sitting en banc will not "expedite the business of court" in this case, and, in fact, will delay its final resolution. Finally, because the Louisiana Receiver has failed to assert what "important public policy matters" are at issue, other than those already decided, no necessity to "promote justice" has been demonstrated.
*669 Accordingly, the application for a rehearing en banc is denied.

Rehearing
In the rehearing application pursuant to Rules 2-18.1 and 2-18.2, the Louisiana Receiver asserts this court overlooked "Health Net's concurrent obligation to maintain the `surplus required' for a Louisiana HMO to remain in operation", the capital and surplus requirement "obligated Health Net to meet all of the liabilities of the Louisiana HMO" and the capital and surplus requirement of the suretyship contract "obligated Health Net to pay for all outstanding liabilities and capital requirements relating to the Louisiana HMO; i.e., the entire $9,511,624.19 awarded by the trial court." The Louisiana Receiver has cited no statutory law or jurisprudence to support this claim.[2]
This claim is patently without merit. La. R.S. 22:20T0C(2), now La. R.S. 22:254; La. R.S. 22:732.2(3)(a)(ii) and (c), now La. R.S. 22:2003; La. C.C. arts. 3036, 3066 and 3067; and La. R.S. 12:1E, I, L, N, T and V.[3]
Accordingly, the application for a rehearing is denied.
NOTES
[1] The Hon. Philip C. Ciaccio, Judge (Retired), the Hon. Walter I. Lanier, Jr., Judge (Retired), and the Hon. Ian W. Claiborne, Judge (Retired), are serving as judges ad hoc by special appointment of the Louisiana Supreme Court.
[2] In brief and oral argument, the parties agreed that the law of Louisiana controls on this issue. La. C.C. art. 3537 et seq.
[3] Although there are minor differences between them, for purposes of this appeal a "guaranty" in the common law is equivalent to our civilian "suretyship." See BLACK'S LAW DICTIONARY 712 and 1456 (7th ed. 1999).
[4] Prior to enactment of 2006 La. Acts No. 533, La. R.S. 10:1-201(40) provided, "`Surety' includes guarantor."
[5] See also La. R.S. 22:741 and 22:746.
[6] Pursuant to the balance billing provisions of La. R.S. 22:2018 A(1) and C, enrollees shall not be liable to providers for any sums owed by their HMO.
[7] See La. R.S. 22:1351 et seq. and La. Admin. Code Title 37, Part XIII, § 1307C.
[1] The Hon. Philip C. Ciaccio, Judge (Retired), the Hon. Walter I. Lanier, Jr., Judge (Retired), and the Hon. Ian W. Claiborne, Judge (Retired), are serving as judges ad hoc by special appointment of the Louisiana Supreme Court.
[2] As previously indicated in our original opinion, the trial court judge refused to advise why she granted this award amount when she ordered to do so in paragraph (9)(n) of the July 10, 2007 order of this Court.
[3] Statutory construction laws require that all laws pertaining to the same subject matter must be interpreted in reference to each others. La. C.C. art. 13; Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., XXXX-XXXX, p. 10 (La. 11/29/06), 943 So.2d 1037, 1045.